SEABOARD INDUSTRIES, INC. v. JERRY BLAIR

No. 7118SC17

(Filed 3 February 1971)

1. **Appeal and Error § 6— appeal from interlocutory injunction — covenant not to compete**

    Appeal by defendant from an interlocutory injunction restraining him from violating provisions of a covenant not to compete in an employment contract is not premature, since a substantial right of defendant would be adversely affected by continuance of the injunction in effect pending final determination of the case. G.S. 1-277.

2. **Contracts § 12; Courts § 21— contract entered in another state— construction and validity — what law governs**

    Law of Georgia applies in construing and determining validity of covenant not to compete contained in an employment contract which was executed in Georgia and which provides that the rights and liabilities of the parties shall be construed under the laws of that state.

3. **Contracts § 7; Master and Servant § 11— covenant not to compete — prerequisites to validity**

    A covenant in a contract of employment providing that, upon termination of the employment, the employee will not engage in competition with the employer will be held valid if it is (1) founded on a valuable consideration, (2) reasonably necessary to protect the legitimate interest of the employer, and (3) reasonable as to time and territory.

4. **Contracts § 7; Master and Servant § 11— covenant not to compete — employment contract — consideration**

    Covenants by an employee not to compete with his employer were supported by valuable consideration where they were part of the origi-

nal contract of employment between the parties, and the fact the written contract may not have been formally executed until several weeks after the employee started work is of no significance.

5. **Contracts § 7; Master and Servant § 11— covenant not to compete — reasonable necessity to protect employer's interest**

Defendant's covenant not to compete with plaintiff corporation for a period of five years after termination of his employment by doing business with any customer, broker, supplier or sales representative of plaintiff in 13 specified states, agreed to by defendant in a contract employing him for five years as manager of one of two petroleum refining and reprocessing companies purchased in the formation of plaintiff corporation, *held* reasonably necessary to protect plaintiff's interest, where defendant had managed such company since its organization in 1964 until purchased by plaintiff in 1968, defendant was familiar with the company's customers, suppliers and brokers and had secured many of the company's customers through his own efforts, and it is obvious that the company would have been worth less than the substantial amount invested by plaintiff if its experienced manager had been free to terminate his contract and compete with the acquiring corporation.

6. **Contracts § 7; Master and Servant § 11— covenant not to compete — reasonableness as to time and territory**

Covenant by the manager of a division of a petroleum refining and reprocessing company not to compete with his employer for a period of five years after termination of his employment by doing business with any customer, broker, supplier or sales representative of the employer in any of 13 specified states in which the employer did business, *held* reasonable as to time and territory.

7. **Contracts § 7; Master and Servant § 11— covenants not to compete — vagueness and ambiguity**

Three covenants not to compete contained in the employment contract of the manager of a division of a petroleum refining and reprocessing company, which covenants relate to competition during the manager's employment and competition for a period of five years after termination of his employment if he breaches his employment agreement or refuses to renew it or his employment terminates by reason of his disability, *held* not void for vagueness and ambiguity.

8. **Contracts § 7; Master and Servant § 11— covenants not to compete — severability**

Where severable, a reasonable covenant not to compete may be enforced even though another separate covenant may be unreasonable and therefore unenforceable.

9. **Contracts § 7; Master and Servant § 11— covenant not to compete — activities prohibited**

Covenant by employee not to compete with his employer within 13 specified states by doing business therein with any of employer's customers, brokers, suppliers or sales representatives "with respect to the same type of business as that business conducted by" employer would not prohibit defendant from activities such as purchasing a

tank of gas, a quart of oil or a railway ticket from companies which are customers of employer.

APPEAL by defendant from *Johnston, Superior Court Judge,* 18 May 1970 Civil Session of GUILFORD County Superior Court.

This appeal is from an order continuing in effect an order restraining defendant from violating the provisions of a covenant not to compete in an employment contract, pending trial of the cause on its merits.

On 5 May 1970 Judge Collier entered an original order, restraining and enjoining defendant from certain acts and ordering him to appear on 14 May 1970 and show cause why the order should not be continued pending final determination of the action in a trial on its merits. The matter was thereafter continued and the case came on for hearing before Judge Johnston on 18 May 1970. Judge Johnston heard and reviewed extensive evidence offered by both parties and in an order, dated 19 May 1970, found facts which we set forth in substance, except where quoted:

1. Plaintiff, a Georgia corporation, is authorized to do business in North Carolina and has a place of business in Greensboro, known as South Oil Division, Seaboard Industries, Inc.

2. Plaintiff was incorporated 1 April 1968 for the purpose of purchasing the assets of Seaboard Oil Company, a Georgia corporation, and its wholly owned North Carolina subsidiary, South Oil Company. Both companies were engaged in the business of distributing, refining, reprocessing and selling petroleum and petroleum products in an area comprising thirteen enumerated eastern and southeastern states.

3. Defendant was manager of South Oil Company at the time of its purchase by plaintiff. In this capacity he had direct connection with the company's suppliers and customers.

4. With the exception of Jack Blase, President of plaintiff, the owners and subscribers of plaintiff's stock were unfamiliar with the type business engaged in by the companies and were interested in the purchase primarily for investment purposes. The plan of acquisition was for the Greensboro operation to thereafter operate as South Oil Division, a division of

plaintiff. Defendant was to be employed as manager for five years and it was contemplated that he would succeed Jack Blase as president when he retired.

5. Because of the inexperience of the incorporators and stock subscribers, except for Jack Blase, with the oil business, and because of their investment of over $1,600,000 in purchasing the two businesses, it was their wish to assure the continuity of trained management and to preclude such management from leaving the plaintiff company and competing with it by doing business with its customers, brokers and sources of supply, in the area where those companies did business.

6. In accordance with the company's plan and for the reason set forth herein, defendant was advised that before going through with the purchase, and before employing defendant, he would be required to enter a five-year employment contract with covenants not to compete against plaintiff in the area where it did business in the event his employment was terminated. Defendant agreed to enter such a contract. It was further agreed that defendant's salary would be $15,000 a year, an increase of $5,000 over his base salary with South Oil Company, and that he would receive an annual bonus of 10% of net profits before taxes of South Oil Division. Defendant was also to receive certain stock options. The matter of the options and the terms and methods of acquiring and paying for the stock continued to be discussed by the parties.

7. Two other employees who were employed full time in the management of the business, including Jack Blase, President, entered agreements containing non-competitive covenants similar to those agreed to by defendant.

8. The stock option agreement, which was more favorable to defendant than the one originally proposed, was worked out and incorporated into a final revised employment contract, containing the other terms previously agreed upon, and was signed by the parties, approved, ratified and confirmed by plaintiff's Board of Directors on 5 June 1968, the agreement being attached to plaintiff's verified complaint. Paragraph 1 of the agreement provides in part:

"Employee hereby agrees with Seaboard that through the term of this Agreement, hereinafter set forth, he will faith-

fully serve and act as Manager of South Oil Division of Seaboard, its successors and/or assigns, subject to the directions of and policies established by the Board of Directors of Seaboard, its successors and/or assigns and will devote his time thereto on a full-time basis as reasonably required. . . "

Paragraph 4 of the Agreement provides:

"It is understood and agreed that Employee will be entitled to two (2) weeks vacation with pay during each calendar year of the term of his employment with Seaboard. However, Employee is to select said vacation time at a time when it is reasonably calculated not to severely and adversely affect the corporate business activities."

Paragraph 5 of the Agreement provides:

"Employee hereby agrees that in the exercise of his authority and the performance of his duties hereunder he will consult and cooperate with the officers of Seaboard."

Paragraph 9 of the Agreement provides:

"As separate and independent covenants for which valuable considerations have been paid, the receipt and sufficiency of which is acknowledged by Blair, and to induce Seaboard to enter into this Employment Agreement, Blair covenants and agrees as follows:

"a. That during the term of his employment with Seaboard, Blair will not be a stockholder, investor, lender, director or employee of any other competitive business, or have any interest, financial or otherwise, direct or indirect in such, nor will Blair directly or indirectly aid or abet any such competitive business during the term of his employment with Seaboard.

"b. That for a period of Sixty (60) months following the termination of Blair's employment with Seaboard, if said termination is because of (1) a breach of this Agreement by Blair, or (2) an election by Blair not to continue in the employ of Seaboard after the term of this Agreement on substantially the same terms as contained in this Agreement but without the stock option, Blair will not directly or indirectly in any manner compete with Seaboard nor engage in the same type of business as that business con-

ducted by Seaboard for himself or others in any capacity.

"c. That during the time Blair is employed by Seaboard and for a period of Sixty (60) months following such employment, if said employment is terminated because of: (1) a breach of this Agreement by Blair, (2) an election by Blair not to continue in the employ of Seaboard after the term of this Agreement on substantially the same terms as contained in this Agreement but without the stock option, or (3) actions taken under the provisions of Paragraph 7 of this Agreement, Blair will not directly or indirectly do business with, solicit business from or engage in business for himself or others with any person, firm, or entity who was a customer, broker or sales representative for Seaboard, or a source of supply of Seaboard, with respect to the same type of business as that business conducted by Seaboard.

"For the purposes of this Agreement, 'competitive business' and 'the same business as that business conducted by Seaboard' shall mean and be defined as the purchase, sale or refining of petroleum and petroleum products or by-products in the States of Florida, Georgia, Tennessee, Alabama, North Carolina, South Carolina, Virginia, Kentucky, West Virginia, Mississippi, Maryland, Pennsylvania and Ohio.

"Each of the aforesaid three covenants contained in this Paragraph numbered 9 is an independent Covenant, which may be availed of or relied upon by Seaboard in any court of competent jurisdiction, and shall form the basis of injunctive relief and damages, including expenses of litigation suffered by Seaboard arising out of any breach thereof by Blair. In the event of any breach of this Employment Agreement by Seaboard or in the event Blair contends that such a breach has occurred, such breach or contended breach shall not vitiate any of the independent covenants set out in this Paragraph numbered 9, each of which shall nevertheless remain in full force and effect."

9. Defendant assumed his position as manager of the company and at the end of the first fiscal year received a bonus in excess of $10,000 in addition to his annual salary of $15,000. Defendant, who had also been elected a member of the plaintiff's Board of Directors attended board meetings, participated in its

deliberations and decisions, and received all financial information of the company and other information otherwise unavailable to him.

10. Mr. Blase worked closely with the defendant and acquainted him with the plaintiff's marketing procedures, prices and sources of supply. In his position as manager of South Oil Division and as the contemplated successor to Mr. Blase, defendant had contact with plaintiff's suppliers and customers and established himself in the oil re-refining business and the oil distributing business in the area where plaintiff conducts its business.

11. Sometime after defendant began his employment he became insubordinate to the president of the company, started resisting reasonable and proper decisions, and advised other directors and officers that he would not continue working under the president. The company took steps to placate defendant but his belligerent and uncooperative attitude toward higher officers of the company and he failed to perform his duties with the company in various enumerated matters.

12. Defendant was absent without authority from his employment for more days than permitted under his contract and in January, 1970, went to Florida for the purpose of assisting a competitive company in litigation with plaintiff.

13. In late 1968 defendant began conferring with other company personnel concerning their terminating employment with plaintiff and entering a competing oil business with a competitive company. Defendant actually entered negotiations to purchase a Greensboro company competing with plaintiff during this period and continued the negotiations into the summer of 1969. On numerous occasions defendant threatened to go into the oil business, and on 18 May 1970, testified that he intended to compete with plaintiff.

14. Plaintiff terminated defendant's employment on 5 May 1970 because of the acts set out above and instituted this action on the same date seeking injunctive relief against him.

The court concluded, based upon the findings set out above, that plaintiff was entitled to the relief sought pending final determination of the case by a jury and ordered as follows:

"Now, THEREFORE, in the discretion of the Court, the defendant is enjoined and restrained, pending the trial of this action on its merits, from directly or indirectly doing business with, soliciting business from, or engaging in business for himself or others, with any person, firm, or entity who on or before May 5, 1970, was:

(a) a customer of plaintiff; or

(b) a broker for plaintiff; or

(c) a supplier of plaintiff; or

(d) a sales representative of plaintiff;

and who purchases, sells or refines petroleum and petroleum products or by-products in the States of Florida, Georgia, Tennessee, Alabama, North Carolina, South Carolina, Virginia, Kentucky, West Virginia, Mississippi, Maryland, Pennsylvania and Ohio. The business which defendant is restrained and enjoined from doing, soliciting or engaging in for himself or others, with the persons, firms and entitles [sic] identified in (a), (b), (c) and (d) above, is only such business as constitutes the purchase, sale or refining of petroleum and petroleum products or by-products in the States of Florida, Georgia, Tennessee, Alabama, North Carolina, South Carolina, Virginia, Kentucky, West Virginia, Mississippi, Maryland, Pennsylvania and Ohio. The plaintiff is required to· give security in the amount of $25,000.00 for the payment of such costs and damages as may be incurred or suffered by the defendant as a result of this Order, if he is found to be wrongfully enjoined or restrained."

Other restrictions imposed by Judge Collier in relating to defendant's personal conduct with plaintiff and its property were also continued in effect. Defendant filed numerous exceptions to the order and appealed.

*Smith, Moore, Smith, Schell and Hunter by Richmond G. Bernhardt, Jr. for plaintiff appellee.*

*Jordan, Wright, Nichols, Caffrey & Hill by Welch Jordan and William L. Stocks and Falk, Carruthers & Roth by Herbert S. Falk, Jr. and Walter Rand III for defendant appellant.*

GRAHAM, Judge.

[1]   The order appealed from is interlocutory. However, appeal from such an order will not be considered premature if a substantial right of appellant would be adversely affected by continuance of the injunction in effect pending final determination of the case. G.S. 1-277; *Board of Elders v. Jones,* 273 N.C. 174, 159 S.E. 2d 545; *Conference v. Creech* and *Teasley v. Creech and Miles,* 256 N.C. 128, 123 S.E. 2d 619; *Cablevision v. Winston-Salem,* 3 N.C. App. 252, 164 S.E. 2d 737. A substantial right of defendant is affected by the order restraining him from engaging in business in the manner set forth, and we therefore consider his appeal.

[2]   The parties agree that the contract involved was executed in Atlanta, Georgia. "It is settled that 'Matters bearing upon the execution, interpretation, and validity of a contract are determined by the law of the place where it is made.' " *Cannady v. R.R.,* 143 N.C. 439, 442, 55 S.E. 836, 837. Further, paragraph 12 of the contract expressly provides that "[t]his Agreement, and the rights and liabilities of the parties hereto, shall be construed under the laws of the State of Georgia." We therefore look to the law of Georgia in considering this appeal.

The leading case in Georgia on the subject of restrictive covenants is *Rakestraw v. Lanier,* 104 Ga. 188, 30 S.E. 735 (1898), wherein it is stated:

"In determining whether such restriction is reasonable, the court will look alone to the time when the contract was entered into. . . .

"It is, however, satisfactorily established that, as a matter of law, such a contract is to be upheld if the restraint imposed is not unreasonable, is founded on a valuable consideration, and is reasonably necessary to protect the in-interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public. . . ."

[3]   These general principles are identical to those which prevail in this State. "[T]he Georgia rule—as well as that of North Carolina and most other jurisdictions—is that a restraint on trade in the form of a restrictive covenant will be countenanced when, under all circumstances it is a reasonable one." *Budget*

*Rent-A-Car Corporation of America v. Fein,* 342 F. 2d 509 (5th Cir. 1965). To determine the validity of a covenant in a contract of employment providing that, upon termination of the employment, the employee will not engage in competition with the employer, it is necessary to apply these tests: (1) Is it founded on a valuable consideration? *Fox v. Avis Rent-A-Car Systems, Inc.,* 223 Ga. 571, 156 S.E. 2d 910; *Ogle v. Wright, et al.,* 187 Ga. 749, 2 S.E. 2d 72; *Buick Co. v. Motors Corp.,* 254 N.C. 117, 118 S.E. 2d 559; *Paper Co. v. McAllister,* 253 N.C. 529, 117 S.E. 2d 431. (2) Is it reasonably necessary to protect the legitimate interest of the employer? *Orkin Exterminating Co., Inc. of South Georgia v. Dewberry,* 204 Ga. 794, 51 S.E. 2d 669; *Rakestraw v. Lanier, supra; Noe v. McDevitt,* 228 N.C. 242, 45 S.E. 2d 121; *Kadis v. Britt,* 224 N.C. 154, 29 S.E. 2d 543. (3) Is the limitation or restriction reasonable as to time, *Day Companies v. Patat,* 403 F. 2d 792 (5th Cir. 1968) ; *Shirk v. Loftis Brothers and Company,* 148 Ga. 500, 97 S.E. 66; *Engineering Associates v. Pankow,* 268 N.C. 137, 150 S.E. 2d 56, and as to territory, *J. C. Pirkle Machinery Company, Inc. v. Walters,* 205 Ga. 167, 52 S.E. 2d 853; *Orkin Exterminating Co., Inc. of South Georgia v. Dewberry, supra; Jewel Box Stores v. Morrow,* 272 N.C. 659, 158 S.E. 2d 840; *Buick Co. v. Motors Corp., supra?*

Defendant argues that the covenant enforced by the trial court in the instant case fails to meet any of the tests enumerated above.

[4] We consider first the question concerning consideration. Defendant relies upon *Greene Co. v. Kelley,* 261 N.C. 166, 134 S.E. 2d 166, and *Chemical Corp. v. Freeman,* 261 N.C. 780, 136 S.E. 2d 118. Both of these cases involved new contracts, entered after employment, which were not based upon any new or additional consideration. The covenants involved here were a part of an original contract of employment between the parties and were therefore founded upon a valuable consideration. The fact that the written contract may not have been formally executed until several weeks after defendant started work is of no significance under the circumstances presented. Moreover, under the Georgia statute of frauds an agreement not to be performed within one year must be in writing. Georgia Code Annotated, Chapter 20-4. Therefore, before the written agreement came into being, defendant had no enforceable five-year contract of

employment. Also, the occasion for delay, if any, in the actual execution of the contract (which incidentally is dated 1 April 1968, the date defendant first assumed his employment responsibilities) was to arrive at a stock option plan more favorable to defendant than the one first set forth in the written agreement. The more favorable stock option plan is a part of the agreement signed. Thus, the trial judge's conclusion that the covenants were based upon valuable consideration is supported by any one of several available theories which arise on his findings and the evidence.

[5] The covenant enforced, in our opinion, was clearly reasonably necessary to protect the interest of plaintiff. Greater latitude is generally allowed in those covenants given by the seller in connection with the sale of a business than in covenants ancillary to an employment contract. *Orkin Exterminating Co., Inc. of South Georgia v. Dewberry, supra.* (For a review of the North Carolina cases enforcing covenants given in connection with the sale of a business see *Jewel Box Stores v. Morrow, supra.*) Among reasons often given for the greater acceptability of "sale of business covenants" are that covenants not to compete enable the seller of a business to sell his good-will and thereby receive a higher price; and they also furnish a material inducement to the purchaser who purchases a business with the hope of retaining its customers. On the other hand, covenants restricting an employee's right to engage in an occupation of his choice after termination of his current employment may tend to produce hardships for the employee and to deprive the public of the service of men in the area where they are most experienced. *Budget Rent-A-Car Corporation of America v. Fein, supra; Orkin Exterminating Co., Inc. of South Georgia v. Dewberry, supra; Hood v. Legg,* 160 Ga. 620, 128 S.E. 891.

It may well be, as defendant argues, that plaintiff is not entitled to have the covenants contained in the employment contract now before us interpreted with the latitude afforded those related to the sale of a business, in that defendant was not the seller, and owned none of the stock of either company purchased by plaintiff.

We nevertheless find the circumstances surrounding the purchase of the companies by plaintiff particularly pertinent to the question of whether the covenant agreed to by defendant

in paragraph 9 (c) of the contract was reasonably necessary to protect plaintiff's interest. Although defendant never owned any interest in South Oil Company, he had participated in its organization. The two owners were his uncles. Defendant managed the company from the time it came into being in 1964 until purchased by plaintiff. He testified that hundreds of customers were secured for the company primarily through his efforts. He was familiar with the company's customers, suppliers and brokers, and was well experienced in the oil business. The chairman of plaintiff's Board of Directors testified:

> "I have told the Court that one of the purposes in discussing with Mr. Blair and in securing from him an employment contract and covenant not to compete was to preserve the management of this company. And as to whether there was any consideration in securing the covenant not to compete concerning customers of Seaboard Oil Company or South Oil Company, customers, source of supply. As to what considerations we gave for that, well, we gave considerable consideration because without customers and without a source of supply, you couldn't stay in business. As to whether Mr. Blair occupied a unique position concerning the customers, yes, he knew the customers; he attended the directors' meetings when he was a director and information was exchanged between Jack Blase and Mr. Blair in their daily operations, . . .

> "As to what consideration I gave about his connection with the customers of the company and the sources of supply of the company, well, we gave serious consideration. That's why it was part of the restrictive covenant that he would not compete, because he would have knowledge of the customers and source of supply and all other things pertaining to this business, and people were putting their life savings into the investment, such as Mr. Byron Cohen and others, and we wanted to protect them, to protect the company, and here he had a contract as chief executive officer at the division, and he had the knowledge there and all the information, and he was Mr. Blase's nephew, and if he walked off and left us, we'd have no business, and this was a very important consideration in the restricted covenant in making an investment of this type—one of the principal considerations. . . . "

The concern expressed by plaintiff's board chairman was a legitimate concern. South Oil Company would obviously have been worth less than the substantial amount invested by plaintiff if its experienced manager had been free to terminate his contract and compete with the acquiring company by dealing with its customers, brokers, suppliers, and others, many of whom he had undoubtedly personally developed. To preclude this possibility, as well as to obtain his service, the plaintiff's investor group was willing to employ defendant in the same capacity he had been employed by South Oil Company, increase his salary substantially, and grant him options to purchase stock in the company. We cannot say that this was unreasonable, or that it imposed an illegal burden upon defendant or society.

[6]  Nor can we say that the covenant's provisions as to time and territory were, under these circumstances, unnecessary to protect the legitimate interest of plaintiff, or that they imposed an unreasonable hardship upon defendant. Indeed, five years' duration has been held reasonable under circumstances less compelling than those present here. See *Day Companies v. Patat, supra; Welcome Wagon, Inc. v. Pender,* 255 N.C. 244, 120 S.E. 2d 739. In cases where the covenants not to compete accompanied the sale of a trade or business, time limitations of ten, fifteen and twenty years, as well as limitations for the life of one of the parties, have been upheld by the Supreme Court of North Carolina. *Jewel Box Stores v. Morrow, supra,* and cases therein cited.

The court found that plaintiff did business in all of the states included in the covenant. This finding is supported by competent evidence and supports the court's conclusion that the covenant enforced is reasonable as to the area covered. "Reasonableness as to territory depends not so much on the geographical size of the territory, as on the reasonableness of the territorial restriction in view of the facts and circumstances of the case." *Thomas v. Coastal Industrial Services, Inc.,* 214 Ga. 832, 108 S.E. 2d 328. "A contract, for instance, for a valid consideration not to engage in the manufacture and sale of firearms in general use would be allowed to cover a larger extent of territory than would a contract not to engage in the manufacture of timber or the ginning of cotton." *Shute v. Heath,* 131 N.C. 281, 282, 42 S.E. 704, 704. The dollar volume of sales of plaintiff's South Oil Company division was $876,110 for the

year 1968-1969. Customers included companies such as Southern Railway Company, White Oil Company, Hi ·Fy Oil Company, McCoy Oil Company, Sun Oil Company, C. & O. and B. & O. Railroads, and Hudson Oil Company, which use plaintiff's products in various states. Thus, the nature of plaintiff's business is quite different from that of businesses where customers, with whom the covenanting employee has contact, are confined within a single city or rather limited areas. Compare *Orkin Exterminating Co., Inc. of South Georgia v. Dewberry, supra; Wake Broadcasters, Inc. v. Crawford,* 215 Ga. 862, 114 S.E. 2d 26, with *Turner v. Robinson,* 214 Ga. 729, 107 S.E. 2d 648 and *Enterprises, Inc. v. Heim,* 276 N.C. 475, 173 S.E. 2d 316.

It should also be noted that the injunction, based upon paragraph 9(c) of the agreement, merely restricts defendant from competing with plaintiff by doing business, within the states listed, with any person, firm or entity who on or before 5 May 1970 was a customer, broker, supplier or sales representative of plaintiff. The result is that the territorial limitation is even more limited, and therefore more reasonable, than if the restriction had forbidden any competitive activity within the restricted area. *Kirshbaum v. Jones,* 206 Ga. 192, 56 S.E. 2d 484.

[7] Defendant strenuously contends that all three covenants contained in paragraph 9 of the agreement are void because they are too vague and ambiguous. While the covenants do not represent models of good draftsmanship, we do find them sufficiently definite to withstand this attack. We interpret the covenants as follows: In paragraph 9(a), defendant agrees not to compete with plaintiff during his actual employment. In 9(b), when read in conjunction with an explanation of terms set out in 9(c), defendant agrees that in the event he breaches the agreement, or elects not to continue under a similar agreement at the end of his term of employment, he will not compete with plaintiff for a period of sixty months by engaging in the same type of business as that conducted by plaintiff within any of the listed states. The covenant contained in 9(c) is that in the event of either of the two contingencies set out in 9(b) or in the event of action taken under paragraph 7, which relates to the termination of the agreement in the event of defendant's disability, defendant is not to compete with plaintiff within the specified states for a period of 60 months by doing business therein with any customer, broker, supplier or sales representative of plaintiff. The latter covenant, which is the one on which

injunctive relief is based, is obviously less restrictive than the one set forth in 9(b).

[8] Defendant also argues that the covenants are unseverable; that the covenant contained in 9(b) is too broad to be enforceable; and that consequently, none of the covenants may be enforced. We reject this argument without inquiring into the enforceability of 9(b). The covenants, in our opinion, are clearly severable. Where severable, a reasonable covenant may be enforced even though another separate covenant may not be reasonable and therefore not enforceable. *Aladdin, Inc. v. Krasnoff*, 214 Ga. 519, 105 S.E. 2d 730. The cases cited by defendant in support of his position are inapplicable. They involve situations where a court refused to employ the "blue pencil" rule, in order to trim an excessively broad territorial restriction down to a reasonable area. See 5 Williston on Contracts, Revised Edition, § 1659. We agree that a court may not exercise its own initiative in such a manner, for to do so would be to draft a new contract for the parties. See dissenting opinion of Bobbitt, Justice (now Chief Justice), in *Welcome Wagon, Inc. v. Pender, supra*, at 250, 120 S.E. 2d at 743. However, this situation is not present here. The contract specifically provides that each of the covenants contained in paragraph 9 is an independent covenant, which may alone form the basis of injunctive relief. Moreover, the nature of the covenants dictate that they be considered separately. The covenant contained in 9(a) is applicable only while defendant is employed by plaintiff. The covenant contained in 9(b) is applicable only if defendant breaches his employment agreement or refuses to renew it. 9(c) may be applied in the event the defendant's employment terminates for either reason set forth in 9(b) or by reason of his disability. The trial judge, in his discretion, based the injunction upon the less restrictive covenant contained in 9(c). This inured to defendant's benefit and affords him no grounds for complaint.

[9] Finally, defendant contends that the covenant unreasonably prohibits his activities. For instance, he argues that the effect of the injunction is to prohibit him from purchasing a tank of gas or a quart of oil from Sun Oil Company, or a railway ticket from Southern Railway Company, since both companies were customers of plaintiff. However, paragraph 9(c) contains the qualifying phrase, "with respect to the same type of business as that business conducted by Seaboard." Suffice to say, we cannot

envision any such far reaching interpretations of the injunction as are suggested by defendant.

For the reasons set forth, the order is affirmed.

Affirmed.

Chief Judge MALLARD and Judge PARKER concur.