FORREST PASCHAL MACHINERY COMPANY v. HAROLD J. MIL-HOLEN, WILLIAM F. MILHOLEN, AND BASIC MACHINERY COMPANY

No. 7518SC454 and No. 7518SC582

(Filed 17 December 1975)

1. **Master and Servant § 11— covenant not to compete — requirements for validity**
    By G.S. 75-1, contracts in restraint of trade are made illegal in N. C.; however, in this State a covenant not to compete is enforceable in equity if it is (1) in writing, (2) entered into at the time and as a part of the contract of employment, (3) based on valuable considerations, (4) reasonable both as to time and territory embraced in the restrictions, (5) fair to the parties, and (6) not against public policy.

2. **Master and Servant § 11— covenant not to compete — execution after initial employment — covenant unenforceable**
    Evidence was sufficient to support the trial court's conclusion that the covenant not to compete executed by defendant William Milholen and plaintiff was not enforceable where such evidence tended to show that defendant was first employed by plaintiff on a permanent basis on 1 February 1966, the contract containing the covenant not to compete was executed on or about 23 July 1966, and defendant received no promotion or increase in salary at the time of the execution of the covenant not to compete.

Machinery Co. v. Milholen

3. **Master and Servant § 11— covenant not to compete — execution after initial employment — compensation given — covenant enforceable**

　　Evidence was sufficient to support the trial court's conclusion that a covenant not to compete between defendant Harold Milholen and plaintiff was enforceable, though not executed at the time of defendant's initial employment, since the evidence tended to show that defendant was promoted from acting general manager to general manager and given a two year term of employment at the same time the covenant not to compete was entered into.

4. **Master and Servant § 11— covenant not to compete — time and territory restrictions reasonable**

　　The trial court properly interpreted a covenant not to compete to mean that defendant would not himself engage in a business in competition with plaintiff nor would he engage to be employed by anyone in a business competing with plaintiff within a radius of 350 miles of plaintiff's home office for a period of two years from the termination of his employment with plaintiff, and such restrictions as to time and territory were reasonable.

APPEAL by plaintiff and defendants from *Crissman, Judge.* Judgment entered 15 April 1974 in Superior Court, GUILFORD County. Heard in the Court of Appeals 13 October 1975.

This is an action for injunctive relief and damages upon plaintiff's allegations that defendants have breached certain covenants not to compete, have divulged and are divulging certan confidential information and trade secrets relating to plaintiff's business, and have conspired to damage and destroy plaintiff's business.

Plaintiff is a corporation which manufactures and sells machinery and equipment used in the brick industry. It also acts as a sales respresentative for other companies which manufacture equipment and machinery used in the rock crushing business.

Defendants Harold J. Milholen (hereinafter referred to as Harold) and William F. Milholen (hereinafter referred to as William) are former employees of plaintiff. Basic Machinery Company is a corporation formed by Harold in 1975 after he left plaintiff's employ, and he and William are its principal stockholders. Defendants have entered into agreements with at least two of plaintiff's competitors to represent them as sales representative—one in all states east of the Mississippi as well as Oklahoma and Texas, and the other throughout the United States. In the national market for the manufacture and sale of the type of equipment manufactured by plaintiff, there are only

four major competitors, including plaintiff. The sales activities of these four major manufacturers, as well as various smaller manufacturers, are all oriented toward a single national market—brick production.

For clarity and ease of understanding we deem it appropriate to trace the factual history of employment and contracts with respect to Harold and William separately.

*William:* Plaintiff's verified complaint and affidavits show that on or about 23 July 1966 plaintiff and William entered into an employment contract which contained a covenant not to compete for a period of five years after termination of employment. The covenant was restricted to "A. Ceramic Plants including brick, tile, sewer pipe, wall tile, pottery, etc. B. Fans for industrial air conditioning trade. C. Machinery and equipment for the aggregate, lightweight aggregate, and mineral industries" and applied to "the territory covered by the northeast, the southeastern, and southwestern United States but do not apply to any other portions." William reserved the right to sell to other industries not specifically listed and to sell in other parts of the United States. William further covenanted that "all information or knowledge that he may attain as a result of said relationship shall be of the utmost secrecy and nature and that the undersigned shall not reveal to any person such knowledge or information or use the same for himself which shall be either to the benefit of the undersigned or to the detriment of Forrest Paschal Machinery Company."

William subsequently became chief engineer for plaintiff and, while serving in that capacity, acquired full knowledge of the design and method of production of all equipment and machinery produced by plaintiff. In August 1974, William became vice-president of plaintiff in charge of sales. In this position he became thoroughly acquainted with the list of customers of plaintiff and the needs and purchasing habits of the customers.

On 18 February 1975, William notified plaintiff of his resignation which became effective 28 February 1975.

William's affidavit shows that he was first employed by plaintiff in 1957 on a part-time basis involving drafting work done at his home. On 1 February 1966, he went with plaintiff as a draftsman on a full-time basis at an annual salary of $6500. At that time, there was no written agreement of any

Machinery Co. v. Milholen

kind. Very shortly after his employment he was placed on an hourly basis and was paid $2.72 per hour, with his duties remaining unchanged. In July 1966, he was told by Mr. Forrest Paschal that the plaintiff had entered into a licensing agreement with Bason and Sons of England to manufacture some of its machinery and one of the requirements imposed upon plaintiff was a covenant not to compete. Mr. Paschal advised William that everyone in plaintiff's employ would have to sign a covenant not to compete as a condition of continued employment. William did sign a form dated 23 July 1966 which was handed him by plaintiff's bookkeeper. He was not working as a sales representative then, but as a draftsman. There was no change in his duties, title, compensation, or working facilities or arrangement. No benefits were given or promised. Mr. Paschal was killed on 7 November 1972, and some changes were made in the company necessitated by the death of the person who had previously had personal control over all company operations. In August 1974, William was made director of sales at an increased salary of $19,000. In December 1974, he was made a vice-president and his salary was increased to $20,000. However, things were so unsatisfactory that he handed in his resignation on 17 February 1975. At that time he did not know where his next employment would be, but he had several possibilities. He had made no definite arrangements with his brother Harold, but later decided to go with the corporate defendant after he learned that the corporate defendant would be representing Pearne & Lacy (a competitor of plaintiff). The designs and means and methods of production of plaintiff are not trade secrets. The machiney and equipment manufactured can be seen by almost anyone at plaintiff's plant or at any plant where the machinery or equipment has been installed or at trade shows. Other manufacturers of equipment and machinery for the brick industry know all there is to know about the Paschal equipment and machinery. While with plaintiff and since leaving plaintiff's employ, he has not given any information of any type or kind to anyone regarding Paschal's machinery or equipment or any designs thereof or any production thereof, nor has he attempted to induce any of plaintiff's employees to leave plaintiff and become associated with the corporate defendant.

*Harold:* Plaintiff's verified complaint and affidavits show: On or about 25 January 1964, Harold and plaintiff entered a written contract of employment pursuant to which Harold

became a sales representative of plaintiff. The contract contained a covenant not to compete restricted to the ceramic industry, quarries and mineral plants, and fans for industrial air conditioning applicable to the territory covered by the southeastern United States. On or about 7 December 1972, plaintiff and Harold entered into a second contract of employment pursuant to which Harold assumed the duties of general manager of plaintiff. That contract contained the following provision:

> "THIRD: The party of the second part further agrees that he will not on the termination for any cause whatsoever of his employment with the employer engage in the same line of business as now carried on by his employers or engage to work for any individual, firm or corporation, within a radius of 350 miles of the Town of Siler City, North Carolina, for a period of two years from the time the employment of employee under this contract ceases; the employee further agrees that he will not during the period of his employment or any time thereafter furnish to any individual, firm, or corporation, other than the employer any list or list of customers or information of any kind or nature pertaining to the business of the employer."

As general manager, Harold was the chief operating officer and in charge of all facets of the plaintiff's business.

In October 1974, Harold was made executive vice-president in charge of international operations.

On 1 February 1975, Harold tendered his resignation effective 15 February 1975. Prior to his resignation, Harold, with his brother William, attempted to induce other employees to leave plaintiff's employ and go into his employ in competition with plaintiff. Harold and William individually and through their corporation have solicited plaintiff's customers and plaintiff has lost business to corporate defendant because of these solicitations.

Defendant Harold's affidavit shows: His first job was as a floor sweeper for Hadley Peoples Manufacturing Company. He worked up to general overseer and then went into sales. In October 1963 he made an agreement with Mr. Forrest Paschal to go with plaintiff at an annual compensation of 15% commission plus insurance, bonus, travel expense and profit sharing. There was no written contract, but Mr. Paschal did give him his notes on their agreement. These handwritten notes do not include any reference to a covenant not to compete. The

first covenant not to compete was signed three months after the employment began and was required by Mr. Paschal as a condition of further employment. There were no changes in the employment until 1968 at which time Harold was taken off commissions and placed on an annual salary of $14,000 plus a guaranteed bonus. In 1969 or 1970 he was made vice-president in charge of sales. Until his death on 7 November 1972, Forrest Paschal was in complete charge of all company operations. After the death of Forrest Paschal and on 11 November 1972, Harold was requested by plaintiff's attorney to go to Mrs. Paschal's home for a conference. At that meeting he was asked to become acting general manager of plaintiff at a salary of $25,000 per year. Accordingly, as of 13 November 1972, he became acting general manager of plaintiff; Southern Buildings Company, an affiliate of plaintiff from which Harold was already receiving an additional $2,000 annually; Paschal Machinery PTY, Ltd., a subsidiary company in Australia; Bason Pasco, a subsidiary company in England; Pasco Industrial Fabricating Company; and Delta Corporation. On 7 December 1972, he received a call from plaintiff's counsel advising that Mrs. Paschal wanted him to sign a contract. On 12 December 1972 he did sign a contract. There was no change in his duties, compensation, responsibilities, or any other circumstances of his employment, and he signed the contract because he was afraid he would lose his job if he didn't. The contract contained a covenant not to compete and an agreement that the employment would continue until 8 November 1974, unless sooner terminated by mutual consent. At the meeting of the board of directors in early 1973, he was made general manager and executive vice-president, again with no change in duties, compensation, etc. Although the contract contained a provision providing for $2,000 annual payment to him by Southern Buildings Company, this was not paid after August 1974. On 17 October 1974, he was fired as general manager and one Aubrey Highfill was president of plaintiff. The position of general manager was eliminated, and Harold was retained as a vice-president and placed in charge of international business. There was very little to do in that position and Harold felt that he was being eased out and resigned on 31 January 1975 effective 14 February 1975. However, when Mr. Highfill received the letter of resignation he told Harold that plaintiff desired no further services from him and asked that he leave as of that date. This Harold did, taking nothing with him but personal belongings.

Defendants offered several affidavits substantiating their position that they had not attempted to arrange for business while employed by plaintiff, that customer lists were available generally and not secret, and that there are no trade secrets and no confidential information regarding the equipment and machinery operated and used in brick plants.

The court found facts and concluded that the covenant not to compete executed by William and the first covenant not to compete executed by Harold are not enforceable because not entered into at the time of employment and not supported by substantial consideration; that the agreements with respect to disclosure of information are enforceable and that even without such an agreement, they could be barred from divulging confidential information and trade secrets; that the contract of 7 December 1972 signed by Harold was supported by consideration, was reasonable as to time and territory and enforceable. Upon the conclusions made, the court entered an order restraining Harold and the corporate defendant in accord with the terms of the contract and further restraining all defendants from disclosing certain information pertaining to plaintiff obtained by them while employed by plaintiff. Defendants appealed.

*Brooks, Pierce, McLendon, Humphrey & Leonard, by C. T. Leonard, Jr., and John L. Sarratt, for plaintiff.*

*Smith, Moore, Smith, Schell & Hunter, by Stephen P. Milliken, Richard W. Ellis and Miles Foy, for defendants.*

MORRIS, Judge.

Although both plaintiff and defendants docketed separate records and filed briefs with respect to the questions presented by each of the appeals, we deem it practical to address all questions raised in each appeal in one opinion.

The order from which defendants and plaintiff appeal restrains defendant from competing with plaintiff pending trial of the cause on its merits, and is, therefore, interlocutory. Generally, an appeal from an interlocutory order is premature. However, the appeal may be considered by appellate courts if a substantial right of the appellant would be affected adversely by continuing the effectiveness of the injunction pending trial on the merits. G.S. 1-277, *Pruitt v. Williams,* 288 N.C. 368, 218 S.E. 2d 348 (1975) and cases there cited: *Industries, Inc. v. Blair,* 10 N.C.

App. 323, 178 S.E. 2d 781 (1971) and cases there cited; *Cable-vision v. Winston-Salem,* 3 N.C. App. 252, 164 S.E. 2d 737 (1968). Here, we think that the order entered restraining defendants from engaging in business in the particulars set forth therein affects a substantial right of defendants. We therefore consider their appeal. *Industries, Inc. v. Blair, supra.* See also *U-Haul Co. v. Jones,* 269 N.C. 284, 152 S.E. 2d 65 (1967) ; *Exterminating Co. v. Griffin and Exterminating Co. v. Jones,* 258 N.C. 179, 128 S.E. 2d 139 (1962) ; and *Wilmar, Inc. v. Liles* and *Wilmar, Inc. v. Polk,* 13 N.C. App. 71, 185 S.E. 2d 278 (1971), cert. denied 280 N.C. 305 (1772). See also G.S. 1A-1, Rule 62(a) and (c).

[1] By G.S. 75-1, contracts in restraint of trade are made illegal in North Carolina. See also G.S. 75-2 and G.S. 75-4. This State, however, has long recognized the rule that a covenant not to compete is enforceable in equity if it is " (1) in writing, (2) entered into at the time and as a part of the contract of employment, (3) based on valuable considerations, (4) reasonable both as to time and territory embraced in the restrictions, (5) fair to the parties, and (6) not against public policy." *Exterminating Co. v. Griffin and Exterminating Co. v. Jones, supra,* at 181, and cases there cited.

[2] The court found as facts that William was first employed by plaintiff on a permanent basis on 1 February 1966 and that the contract containing the covenant not to compete was executed on or about 23 July 1966. The court further found that he did not receive any promotion or increase in salary at the time of the execution of the covenant not to compete and that thereafter he remained in plaintiff's employ for some 8½ years, received numerous increases in salary and was promoted to the positions of director of engineering, director of sales, and vice-president. There was ample evidence before the court to support these findings. It is clear that, based upon the findings of fact, the covenant not to compete executed by William on 23 July 1966 was not ancillary to a contract of employment nor was it supported by substantial consideration. The court correctly concluded that the covenant not to compete executed by William and plaintiff is not enforceable.

[3] The covenant not to compete entered into by plaintiff and Harold on or about 25 January 1964 is also unenforceable for the same reasons which make William's covenant invalid. However, the contract entered into between plaintiff and Harold

dated 7 December 1972 falls into a different category. Harold's affidavit stated that he was made *acting* general manager on or about 13 November 1972 and that when he signed the contract of employment containing a covenant not to compete some three weeks later, there were no changes in his duties, responsibilities, or compensation. The contract provides "that for the purpose and subject to the terms and conditions hereinafter set forth said parties of the first part [Forrest Pascal Machinery Company and Southern Buildings Company], do hereby employ said party of the second part (Harold) and said party of the second part hereby accepts such employment." It further provides "that the duties to be performed by the party of the second part are as follows: Shall act as *General Manager* for Forrest Paschal Machinery Company, Southern Buildings Company, Delta Corporation, Pas-Co Industrial and Fabricating Company, PTY Ltd., and Bason & Company Ltd.;" (Emphasis supplied) Harold's affidavit concedes that he was made general manager by the contract but states that there were no changes in his duties or compensation. The contract further provides that "[T]his employment and the compensation therefor shall begin as of the 8th day of November 1972, (sic) unless sooner terminated by mutual consent of both parties, shall exist and continue until the 8th day of November 1974." Harold concedes that the contract did provide for guaranteed two years employment. There is no evidence that this term was discussed at the 7 November conference when Harold was made acting general manager. We think the evidence is sufficient to support the court's finding that "On or about December 7, 1972, a written contract was entered into between plaintiff and defendant Harold J. Milholen, pursuant to which Mr. Milholen was promoted to General Manager of Forrest Paschal Machinery Company for a period of two years." Upon the findings the court concluded that the covenant was supported by consideration, superseded the earlier covenant, and was reasonable both as to time and territory. We agree. While it may be questionable as to whether the covenant was actually ancillary to employment, Harold was promoted from *acting* general manager to general manager and given a two-year term of employment as general manager. In *Greene Co. v. Kelley*, 261 N.C. 166, 168, 134 S.E. 2d 166 (1964), Justice Higgins, speaking for a unanimous Court, said:

"It is generally agreed that mutual promises of employer and employee furnish valuable considerations each to the other for the contract. However, when the relationship of

employer and employee is already established without a restrictive covenant, any agreement thereafter not to compete must be in the nature of a new contract based upon a new consideration. *Kadis v. Britt, supra.* Therefore, the employer could not call for a covenant not to compete without compensating for it."

We think the evidence here brings the contract between plaintiff and Harold within the ambit of *Greene Co. v. Kelley.*

[4] Defendants argue further that the covenant was not reasonable in that it provided that Harold could not accept any kind of employment for any individual, firm, or corporation within a radius of 350 miles of Siler City, North Carolina. This is a strained interpretation of the agreement which reads: "The party of the second part further agrees that he will not on the termination for any cause whatsoever of his employment with the employer *engage in the same line of business as now carried on by his employers or engage to work for any individual, firm, or Corporation,* within a radius of 350 miles of the Town of Siler City, North Carolina, for a period of two years from the time the employment of employee under this contract ceases;". (Emphasis supplied.) The punctuation employed in the covenant, it seems to us, makes it quite clear that the parties intended the contract to mean that Harold would not himself engage in a business in competition with plaintiff nor would he engage to be employed by anyone in a business competing with plaintiff within a radius of 350 miles of plaintiff's home office for a period of two years from the termination of his employment with plaintiff. This is the interpretation the court gave to the contract, and nothing in the evidence indicates that Harold interpreted it any differently. In our opinion, the court correctly interpreted the contract in its order. Nor does the evidence disclose anything which would indicate that the restrictions with respect to time and territory are unreasonable. On the contrary, the record is replete with evidence of the fact that plaintiff does business over almost all the United States and even beyond its boundaries. Under the facts of this case, we cannot say that two years is an unreasonable time within which Harold may not compete with plaintiff within a radius of 350 miles of Siler City.

Defendants concede that even absent an agreement, former employees may be restrained from divulging confidential information acquired while an employee, but they contend that

there is evidence that no information acquired by defendants was confidential; that if they did acquire confidential information, they haven't divulged it; and that no restraining order should lie until and unless defendants use information obtained as an employee to the detriment of plaintiff. There is evidence that within weeks after the cessation of employment with plaintiff, defendants formed a corporation for the purpose of acting as sales respresentative for plaintiff's competitors and had obtained a contract to represent a California competitor. By their own statement, defendants had, between the date of termination of their employment relationship with plaintiff and the date of the hearing, visited 20 to 25 brick manufacturing plants and made known to those plants that they would be acting as sales representative for Pearne & Lacy, Industrial Metal Flame Sprayers, and Star Engineering Company. Pearne & Lacy is a major competitor of plaintiff and Star Engineering Company and Industrial Metal Flame Sprayers are minor competitors of plaintiff. Each of these companies competes directly with plaintiff throughout the United States. The corporation formed by defendants was for the express purpose of competing with plaintiff. Obviously, the individual defendants could only have acquired their knowledge of the business of plaintiff while employed by it. Neither came to plaintiff from a similar business and each rose to positions of trust and confidence in executive capacities while employed by plaintiff. There is evidence that at the time of the visits referred to, sales proposals for plaintiff were still outstanding to at least six of the plants. While we do not discuss in seriatim the separately enumerated areas of restraint with respect to divulging information, we are of the opinion that there was evidence before the court to justify each of them.

Further, we are of the opinion that the evidence is sufficient to sustain the court's conclusion that there is probable cause to conclude that "the plaintiff will be able, following a trial on the merits, to enjoin Harold Milholen, both individually and through the corporate form of Basic Machinery Company, from violating the covenant not to compete contained in his contract of December 7, 1972 and that it will be able to enjoin both of the individual defendants from revealing information concerning the business of plaintiff which they learned while in plaintiff's employ" and that "there is reasonable apprehension of irreparable loss to the plaintiff unless injunctive relief is

Billings v. Harris Co.

granted." *Conference v. Creech* and *Teasley v. Creech and Miles,* 256 N.C. 128, 123 S.E. 2d 619 (1962).

On plaintiff's appeal—Affirmed.

On defendants' appeal—Affirmed.

Judges HEDRICK and ARNOLD concur.