ELMORE, Judge.,
dissenting.
Because I believe the “blue pencil” doctrine applies to the parties’ provision in the non-compete purportedly enabling the trial court to *453 rewrite or modify the unreasonable territory restrictions, I would affirm the trial court’s order granting summary judgment for defendants on plaintiffs claim of breach of the non-compete. I would also affirm the trial court’s order granting defendants’ motion for summary judgment on plaintiff’s cause of action for tortious interference with a contract because plaintiff did not forecast enough evidence of conduct to show that it formed an implied contract-in-fact with its customers. As such, plaintiff’s claims for tortious interference with a prospective economic advantage, unfair and deceptive trade practices, and injunctive relief would necessarily fail, and I would affirm the trial court’s order as to those issues.
I. Analysis
a. j Breach of the non-compete
Plaintiff argues that the trial court erred in granting defendants’ motion for summary judgment on plaintiff’s claim for breach of the non-compete. I disagree.
“Our standard of review of an appeal from summary judgment is de novo-, such judgment is appropriate only when the record shows that ‘there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.’ ” In re Will of Jones, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting Forbis v. Neal, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007)). We must consider “the pleadings, affidavits and discovery materials available in the light most favorable to the non-moving party[.]” Pine Knoll Ass’n, Inc. v. Cardon, 126 N.C. App. 155, 158, 484 S.E.2d 446, 448 (1997).
While I agree with the majority that the geographic area covered by the non-compete was overbroad and thus unreasonable, the majority further concludes that “the trial court had authority to enforce the non-compete through paragraph six of the non-compete which specifically and expressly gave the trial court authority to ‘revise the restrictions’ ‘to cover the maximum period, scope and area permitted by law.’ ” Thus, the majority rules that the “blue pencil” doctrine is inapplicable in the present case due to the parties’ aforementioned agreed upon provision.
Parties to a contract “may bind themselves as they see fit... unless the contract would violate the law or is contrary to public policy.” Lexington Ins. Co. v. Tires Into Recycled Energy & Supplies, Inc., 136 N.C. App. 223, 225, 522 S.E.2d 798, 800 (1999) (citation and quotation marks omitted). The “blue pencil” doctrine, in part, serves to prevent a court from “draft[ing] a new contract for the parties.” Seaboard Indus., *454 Inc. v. Blair, 10 N.C. App. 323, 337, 178 S.E.2d 781, 790 (1971). The doctrine drastically restricts a court’s authority to modify an overly broad territory restriction: “A court at most may choose not to enforce a distinctly separable part of a covenant in order to render the provision reasonable. It may not otherwise revise or rewrite the covenant.” Hartman v. W.H. Odell & Associates, Inc., 117 N.C. App. 307, 317, 450 S.E.2d 912, 920 (1994).
Here, the provision that purportedly gives the trial court authority to rewrite the non-compete’s unreasonable territory restrictions states, in part:
If, at the time of enforcement... a court holds that the restrictions stated herein are unreasonable under the circumstances then existing, the parties hereto agree that... the court shall be allowed to revise the restrictions contained ... to cover the maximum period, scope and area permitted by law.”
(emphasis added). The language of the provision expressly limits a court’s revision to that “permitted by law.” Thus, the provision by its very terms makes the “blue pencil” doctrine applicable. Alternatively, the provision is unenforceable as it violates the “blue pencil” doctrine on its face. Under either scenario, the “blue-pencil” doctrine applies.
The trial court was correct by not rewriting the non-compete to make it reasonable because the law makes clear that a court cannot engage in such action. However, the trial court has the authority to enforce portions of a non-compete that are reasonable and disregard the remaining portions if the non-compete divides the restricted area into distinct units. See Welcome Wagon Int’l, Inc. v. Pender, 255 N.C. 244, 248, 120 S.E.2d 739, 742 (1961). While the non-compete in the case at bar divides the restricted territory into North Carolina and South Carolina, the trial court did not enforce any portion of the non-compete because neither of those restrictions taken separately are reasonable, even in light of the deference given towards non-compete covenants resulting from business sales. In sum, the non-compete’s territory restrictions were unreasonable, and the trial court was without legal authority to rewrite or modify the territory restrictions irrespective of the parties’ contractual provision providing otherwise.
While the majority relies on Outdoor Lighting Perspectives Franchising, Inc. v. Harders, _ N.C. _ App. _, 747 S.E.2d 256 (2013) in support of its holding, that case addressed a franchisor’s (a party to the non-compete), as opposed to a trial court’s, right to modify *455 a non-compete outside the context of a business sales contract. Id. at _, 747 S.E.2d at 265, n.3. The majority asserts that Outdoor Lighting “indicates a willingness of our courts to recognize and enforce revised non-compete agreements[.]” However, the majority’s ruling in this case takes a far more drastic approach, ordering the trial court to undertake the revising and rewriting of the non-compete rather than the contracting party.
In light of these reasons, I would affirm the trial court’s order granting summary judgment for defendants on plaintiff’s claim of breach of the non-compete because the covenant is unenforceable and invalid.
b.~) Tortious Interference With a Contract
Next, the majority agrees with plaintiff’s argument that the trial court erred in granting defendants’ motion for summary judgment on plaintiff’s cause of action for tortious interference with a contract. Plaintiff avers that a contract implied-in-fact existed between itself and its customers acquired from the agreement. I disagree.
The first element of tortious interference with contractual rights is “(1) the existence of a valid contract between plaintiff and a third party[.]” Barker v. Kimberly-Clark Corp., 136 N.C. App. 455, 462, 524 S.E.2d 821, 826 (2000) (citation omitted). Mutual assent of both parties to the terms of a contract “is essential to the formation of any contract ... so as to establish a meeting of the minds.” Connor v. Harless, 176 N.C. App. 402, 405, 626 S.E.2d 755, 757 (2006) (citation and quotation omitted). Mutual assent is typically formed “by an offer by one party and an acceptance by the other, which offer and acceptance are essential elements of a contract.” Id. (citation and quotation omitted) (emphasis in original). An implied contract-in-fact is “as valid and enforceable as an express contract.” Creech v. Melnik, 347 N.C. 520, 526, 495 S.E.2d 907, 911 (1998) (citation omitted). The formation of an implied contract “arises where the intent of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts.” Id. (citation omitted). The conduct of the parties shall imply an offer and acceptance. Revels v. Miss Am. Org., 182 N.C. App. 334, 337, 641 S.E.2d 721, 724 (2007).
Here, plaintiff concedes that “there are no written [customer] contracts. The [defendants] didn’t have any when they sold the business nor did [plaintiff].” However, plaintiff alleges that defendants “w[ere] aware of the contracts and customers transferred to [plaintiff] at the time of purchase of the Business.”
*456 In support of its contention that a contract implied-in-fact existed with customers, plaintiff referenced 1.) Gandino’s affidavit stating that plaintiff conducted business with customers who “had engaged in a regular course of conduct and business relationships with Imperial and/ or Elegant since at least 2007”; and 2.) Ludine Dotoli’s affidavit that “the arrangement was that so long as Imperial provided competent services at reasonable rates, its customers kept calling back for additional services. So long as Elegant called on its account and successfully promoted and sold the coffee and tea products provided to it by its vendors, Elegant continued representing its suppliers.” Contrary to the majority’s holding, the forecast of evidence put forth by plaintiff suggesting a general business relationship with its customers was insufficient evidence to constitute an offer, acceptance, mutual assent, or obligation to fulfill specific terms of an agreement. Thus, I would affirm the trial court’s order granting defendants’ motion for summary judgment on this issue because plaintiff did not forecast enough evidence of conduct to show that it formed an implied contract-in-fact with its customers.
c. j Tortious Interference WithaProspectiveEconomiic Advantage
Plaintiff also argues that the trial court erred in granting defendants’ motion for summary judgment on plaintiff’s cause of action for tortious interference with a prospective economic advantage. I disagree.
A plaintiff bringing a cause of action for tortious interference with a prospective economic advantage must establish that “the defendant, without justification, induced a third party to refrain from entering into a contract with the plaintiff, which would have been made absent the defendant’s interference.” MLC Auto., LLC v. Town of S. Pines, 207 N.C. App. 555, 571, 702 S.E.2d 68, 79 (2010) (citation omitted).
As previously discussed, plaintiff did not establish the existence of any contracts with its customers. Thus, plaintiff’s forecast of evidence necessarily does not and cannot identify any actual contract that defendants induced customers to refrain from entering. Moreover, plaintiff never specifically alleges defendants’ inducement to refrain from entering a contract, but merely states, “[ajbsent the Defendants’ interference, [plaintiff] would have maintained its customer base [, ] ” “Defendants have purposely and intentionally interfered with the contracts... of [plaintiff] with the intent to steal the customers[,]” “Defendants have directly contacted and solicited the customers of [plaintiff] [,]” and “Defendants have interfered with [plaintiff’s] business relationships^]”
*457 While plaintiff had an expectation of a business relationship with its customers, it forecasts no evidence in the record to show that but for defendants’ actions, contracts with its customers would have been formed. Plaintiff merely makes general and speculative allegations regarding potential future contracts: “As a result of Defendants’ interference with [plaintiff’s] business relationships and business expectancy, [plaintiff] has suffered damages ... in excess of $10,000.00.” Plaintiff’s expectation of a business relationship with current customers is insufficient by itself to establish a tortious interference with a prospective economic advantage claim. See Dalton v. Camp, 353 N.C. 647, 655, 548 S.E.2d 704, 710 (2001) (rejecting a claim for tortious interference with a prospective economic advantage claim because “while [plaintiff] may have had an expectation of a continuing business relationship with [customer], at least in the short term, he offers no evidence showing that but for [defendant’s] alleged interference a contract would have ensued”). Thus, I would affirm the trial court’s order granting summary judgment in favor of defendants on this issue.
d. j Unfair and/or Deceptive Trade Practices
Next, plaintiff argues that the trial court erred in granting summary judgment for defendants on plaintiff’s claim for unfair and deceptive trade practices. I disagree.
Plaintiff contends that claims involving breach of a covenant not to compete, tortious interference with contracts, and tortious interference with a prospective economic advantage form the basis for claims of unfair and deceptive trade practices. Even if we assume arguendo that this is true under North Carolina law, plaintiff argues that the trial court erred in granting summary judgment on the issue of unfair and deceptive trade practices because “[plaintiff] has set forth sufficient evidence to establish material questions of fact as to each element of its claims” for tortious interference with a contract, tortious interference with a prospective economic advantage, and breach of the non-compete. Since I would rule that plaintiff failed to establish genuine issues of material facts on those claims, plaintiff’s claim for unfair and deceptive trade practices would necessarily also fail.
e.~> Injunctive Relief
Finally, plaintiff argues that it is entitled to injunctive relief because it has established that the trial court erred in granting summary judgment for defendants. However, since I would hold that the trial court did not err in granting summary judgment, plaintiff’s argument for injunc-tive relief would be meritless.
*458 II. Conclusión
In sum, I would affirm the trial court’s order granting defendants’ motion for summary judgment because no genuine issue of material fact exists as to plaintiff’s claims for breach of the non-compete, tortious interference with a contract, tortious interference with a prospective economic advantage, unfair and deceptive trade practices, and injunc-tive relief.