TRAVENOL LABORATORIES, INC. v. CONRAD K. TURNER, CUTTER LABORATORIES, INC., AND BILLY MORRIS

No. 7614SC271

(Filed 6 October 1976)

**1. Courts § 21— validity of covenants not to compete — what law governs**

The validity of contracts containing covenants not to compete was governed by California law, the law of the place where the contracts were made, and under such law the covenants were invalid.

**2. Courts § 21— duty in tort — what law governs**

The existence of a duty in tort is determined under the law of the state in which the relationship giving rise to the duty was created.

**3. Unfair Competition— employee's disclosure of confidential information — California law**

Where an employer-employee relationship arose and was terminated in California, a duty by the employee not to disclose confidential information of the employer arose in tort as unfair competition under California law.

**4. Injunctions § 6; Unfair Competition — preventing disclosure of trade secrets**

An injunction will issue to prevent unauthorized disclosure and use of trade secrets and confidential information.

**5. Injunctions § 13— requirements for preliminary injunction**

In order to gain a preliminary injunction, a plaintiff must show (1) probable cause of success on the merits at trial, and (2) a reasonable apprehension of irreparable injury unless interlocutory relief is granted.

**6. Injunctions § 13; Master and Servant § 11; Unfair Competition — prohibiting disclosure of trade secrets — likelihood of disclosure**

To establish a reasonable apprehension of irreparable injury in an action for a preliminary injunction to prevent a former employee's disclosure of trade secrets and confidential information, the plaintiff must establish a high likelihood of disclosure of the information; in determining such likelihood, the courts will consider such factors as the circumstances surrounding termination of the employment, the importance of the employee's job, the type of work performed by the employee, the kind of information sought to be protected, and the need of the competitor for the information.

**7. Master and Servant § 11; Unfair Competition — prohibiting competitor's employment of former employee**

Plaintiff was not entitled to a preliminary injunction preventing a former employee from working for a competitor as a manager of plasma fractionation solely as a means of enforcing the former employee's duty not to disclose confidential information where: the employee had no specialized technical training and was employed

Laboratories, Inc. v. Turner

at plaintiff's production facility, not at its research and development facility; the employee terminated his employment with plaintiff on his own accord and was not contacted by his new employer until after such termination; and plaintiff and the competitor have achieved comparable success in plasma fractionation.

**8. Master and Servant § 11; Unfair Competition— former employee — prohibiting disclosure of modification of centrifuge**

The trial court properly entered a preliminary injunction prohibiting plaintiff's former employee from disclosing to a competitor plaintiff's modification of a centrifuge used in plasma fractionation where plaintiff showed that the centrifuge is used in production, the former employee occupies a high level supervisory position in production of plasma fractions by the competitor, and some of plaintiff's competitors have tried without success to make a similar modification of the centrifuge; however, the court erred in prohibiting the disclosure of "all information regarded as confidential" where plaintiff failed to show the use of unique processing other than the modified centrifuge.

**9. Master and Servant § 11; Unfair Competition— former employee — prohibiting disclosure of written confidential information**

The court erred in granting a preliminary injunction prohibiting plaintiff's former employee from disclosing to a competitor any written documents obtained by the employee from plaintiff containing trade secrets or other confidential information where there was nothing in the record to show that the employee took or possessed such documents or that the employee had any motive to take or use such documents.

APPEAL by plaintiff and by defendants from *Preston, Judge.* Order entered 28 November 1975, in Superior Court, DURHAM County. Heard in the Court of Appeals 17 June 1976.

Plaintiff, Travenol Laboratories, Inc. (hereinafter called Travenol), a pharmaceutical manufacturing firm, seeks injunctive relief to protect its trade secrets and to limit the employment of defendant Turner by a competitor, Cutter Laboratories, Inc. (hereinafter called Cutter). The corporate plaintiff and corporate defendant are engaged in the manufacturing process of "plasma fractionation," which includes the extraction, processing and sale of human blood components, or plasma fractions used in medical treatment and research. Cutter and Travenol are two of the largest producers of plasma fractions. Plasma fractionation is achieved by use of the Cohn process. The Cohn process is a standard five-variable system that has been used for decades by all the major producers of blood fractions. The standard Cohn process produces different plasma fractions as the five factors are varied. Those factors are (1)

the alcohol concentration used for precipitation; (2) the pH; (3) the salt concentration; (4) the protein concentration; and (5) the temperature. The yield of fractions per liter accounts for the profitability of the process. Each manufacturer can affect the yield primarily in two ways: (1) by variation of the five factors of the Cohn process, and (2) by use of different equipment and facilities. The optimal variations for each manufacturer are determined through research and development; once these standards have been determined, the production department may not change them, but must adhere rigidly to the correct standards to produce the desired quality and yield.

Defendant Turner was employed in plaintiff's plasma fractionation plant located at Glendale, California, from 1953 until 1973, at all times in management and production positions. He rose steadily in the facility, becoming in turn a supervisor, a production manager, an assistant plant manager, plant manager, and director of therapeutics manufacture.

In 1966 and 1971 Turner executed written employment agreements with plaintiff. These agreements, which are essentially identical, included both a covenant not to compete and a covenant not to disclose or use trade secrets and confidential information. Plaintiff acknowledges that the covenant not to compete, made in California, is invalid under California law and does not rely on this covenant. Plaintiff still seeks, however, to limit defendant Turner's employment with Cutter as a remedy to prevent violation of the covenant not to disclose.

Turner terminated his employment with plaintiff about 5 September 1975, although he continued to be paid until 3 October 1975, and in his deposition testified that his reasons for doing so were lack of communication between plaintiff's new president and him and changes in the manufacturing process effected by management. Turner had also recently been divorced.

Turner was contacted by several firms, including Abbott Laboratories, another major competitor of Travenol. His first contact with Cutter did not take place until after 1 October 1975. On 31 October 1975 Turner was employed by Cutter as production manager of plasma fractionation at its new plant located in Clayton, North Carolina. Defendant Morris was then the director of the plant. This facility was devoted to the manufacture, production and sale of human plasma components. All

research and development facilities of Cutter remained in California.

On 3 November 1975, Judge Preston entered a temporary restraining order which enjoined defendant Turner from working for defendant Cutter and from revealing to said defendant any trade secrets acquired by him during his employment by plaintiff. This order set the time and place for a hearing on plaintiff's motion for preliminary injunction. At this hearing the court considered the pleadings, depositions, affidavits and briefs submitted by the parties.

The affidavits and depositions submitted by the plaintiff tended to show the following: There are eight companies in the United States engaged in the business of human plasma fractionation. All eight companies use the same general process, the Cohn process, but plaintiff has developed numerous secret refinements of the Cohn process which enable it to produce a greater yield per liter of better quality than its competitors. These secret refinements include the exact temperature at which certain procedures are performed and modifications made in the Westphalia centrifuge, an item of equipment used in the fractionation process. During his period of employment defendant Turner became familiar with all of plaintiff's trade secrets in the production of plasma fractions.

In opposition defendants submitted depositions and affidavits tending to show the following: Defendant Turner was employed by defendant Cutter to work entirely in the area of manufacturing at its Clayton plant, not in its research and development facilities in California. He was not a college graduate and had not been given scientific training by plaintiff. When he signed the covenants not to compete or disclose submitted to him by plaintiff in 1966 and 1971 he was not given a salary increase or any other benefits, but was told that unless he signed the covenants he would be fired. He was employed by defendant Cutter for his management skills. He had not received from Travenol any writings concerning any trade secrets or confidential information. He had not been asked to reveal any of plaintiff's trade secrets and does not intend to do so. The methods used in the plasma fractionation process are standard throughout the industry, have been published and are not secret. Plaintiff had employed former employees of defendant Cutter Laboratories and had asked them to reveal all they knew about the fractionation process used by Cutter.

The trial court found that the covenants not to compete signed by defendant in 1966 and 1971 while employed by plaintiff were invalid under California law, and refused to enjoin defendant Turner from working for defendant Cutter, either under the contracts or as a means of enforcing the duty not to disclose confidential information. However, the court preliminarily enjoined defendant Turner from revealing any of plaintiff's trade secrets, and "all information regarded as confidential," including information concerning the mechanical modification by plaintiff of the Westphalia centrifuge, and enjoined defendants Cutter and Morris from inquiring of Turner or otherwise obtaining plaintiff's trade secrets.

All parties appealed.

*Sanford, Cannon, Adams & McCullough by J. Allen Adams, Robert W. Spearman, and H. Hugh Stevens, Jr., for plaintiff appellant-appellee, Travenol Laboratories, Inc.*

*Boyce, Mitchell, Burns & Smith by G. Eugene Boyce and James M. Day for defendant appellant-appellee, Conrad K. Turner.*

*Womble, Carlyle, Sandridge & Rice by Charles F. Vance, Jr., Linwood L. Davis and W. Andrew Copenhaver for defendant appellants-appellees, Cutter Laboratories, Inc. and Billy Morris.*

CLARK, Judge.

This case presents several issues for resolution. At the outset we are presented with a conflict of laws issue. The employment agreements executed by the defendant Turner in 1966 and 1971 were made in the State of California, where Turner was then employed by plaintiff. These agreements, substantially identical, contained (1) a covenant not to compete, and (2) a covenant not to disclose confidential information and trade secrets.

[1] The validity of these contracts is governed by California law, the law of the place where the contracts were made. *Fast v. Gulley,* 271 N.C. 208, 155 S.E. 2d 507 (1967). Plaintiff concedes that the covenant not to compete is invalid under the California statute entitled "Contracts in Restraint of Trade," which provides that: " . . . every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." West. Ann. Cal. Bus.

---

---

& Prof. Code § 16600 (1964). *Frame v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 20 Cal. App. 3d 668, 97 Cal. Rptr. 811 (1971).

**[2, 3]** Defendants next urge the invalidity under California law of the covenants not to disclose confidential information and trade secrets. We find it unnecessary to resolve the issue of contractual validity because the same duty not to disclose confidential information of the employer arises in tort as unfair competition under California law. West. Ann. Cal. Labor Code § 2860 (1971) ; *Cal. Intelligence Bureau v. Cunningham,* 83 Cal. App. 2d 197, 188 P. 2d 303 (1948) ; *Riess v. Sanford,* 47 Cal. App. 2d 244, 117 P. 2d 694 (1941). The existence of a duty in tort is determined under the law of the state in which the relationship giving rise to the duty was created. *Young v. R. R.,* 266 N.C. 458, 146 S.E. 2d 441 (1966). The employer-employee relationship in this case arose and was terminated in California. We note that the existence of this duty is recognized under the law of North Carolina as well as the law of California. *Kadis v. Britt,* 224 N.C. 154, 29 S.E. 2d 543 (1944) ; *Machinery Co. v. Milholen,* 27 N.C. App. 678, 220 S.E. 2d 190 (1975). The complaint, though alleging the breach of a covenant against disclosure, sufficiently alleges a tort violation arising under the employer-employee relationship. Since the courts will not enforce a negative covenant not to disclose if it imposes rules unnecessary to the protection of the employer or that are unreasonable, the duty not to disclose under the contractual covenant is no broader than the duty arising in tort. Further, we are now concerned with injunctive relief which should not be extended beyond the threatened injury. 2 R. Callman, Unfair Competition, Trademarks and Monopolies, p. 490, (3d Ed. 1968).

Although this duty was originally grounded in the property right of the employer in confidential information, it is now felt that the duty arises because of the trust and confidence imposed by the employer upon the employee. Restatement (Second) Agency § 396 (1958) ; Restatement Torts § 757 (1939) ; D. Dobbs, Remedies § 10.5 (1973). In enforcing this duty, courts must weigh the importance of two policies central to a free market economy. On the one hand, to promote experimentation with new ideas, the employer must feel free to entrust confidential ideas and information to employees without fear that competitors will unfairly gain access to such information. On the other hand, the employee must have the freedom to sell skills fairly and honestly acquired to the highest bidder. This reflects

a commitment to market efficiency, but more importantly to personal freedom in choosing one's employment. North Carolina has a particular commitment to the importance of this freedom reflected in the Right to Work Law, G.S. Chap. 95, Art. 10.

[4] These policies must be weighed by a court in considering an application for injunctive relief. While the substantive law being administered here is that of California, the procedural law, including that of injunctive relief, is that of North Carolina. *Cobb v. Clark*, 265 N.C. 194, 143 S.E. 2d 103 (1965). Restatement (Second) Conflict of Laws § 131 (1971). An injunction is an extraordinary remedy and will not be lightly granted. *Huskins v. Hospital*, 238 N.C. 357, 78 S.E. 2d 116 (1953). It is well settled that an injunction will issue to prevent unauthorized disclosure and use of trade secrets and confidential information. *Kadis v. Britt, supra; Machinery Co. v. Milholen, supra.*

[5, 6] In order to gain a preliminary injunction, a plaintiff must show (1) probable cause of success on the merits at trial, and (2) a reasonable apprehension of irreparable injury unless interlocutory relief is granted. *Pruitt v. Williams*, 288 N.C. 368, 218 S.E. 2d 348 (1975); *Setzer v. Annas*, 286 N.C. 534, 212 S.E. 2d 154 (1975); *U-Haul Co. v. Jones*, 269 N.C. 284, 152 S.E. 2d 65 (1967). To establish a reasonable apprehension of irreparable injury in a case such as this the plaintiff must establish that the likelihood of disclosure of the information is high. In making these determinations courts weigh several factors, among them the circumstances surrounding the termination of employment, the importance of the employee's job, the type of work performed by the employee, the kind of information sought to be protected, and the need of the competitor for the information. *Engineering Associates v. Pankow*, 268 N.C. 137, 150 S.E. 2d 56 (1966), (injunction denied); *Machinery Co. v. Milholen, supra,* (preliminary injunction granted); *Moye v. Eure,* 21 N.C. App. 261, 204 S.E. 2d 221 (1974), *cert. denied,* 285 N.C. 590, 205 S.E. 2d 723 (1974) (preliminary injunction denied); 2 R. Callman, *supra,* at § 59.1.

Plaintiff has sought injunctive relief in three separate areas: (1) to prevent defendant Turner from working for defendant Cutter as a means of enforcing the duty not to disclose confidential information; (2) to prevent defendant Turner from disclosing "all information regarded as confidential,"

including the mechanical modification of the Westphalia centrifuge; and (3) to prevent defendant Turner from disclosing any written trade secrets or other writings containing confidential information and to prevent Cutter from obtaining the same from Turner. We now consider each of these requests in light of the law of injunctive relief set forth above.

[7]   First, plaintiff has sought to enjoin defendant Turner from working for Cutter as a manager of plasma fractionation. Plaintiff does not oppose Cutter's employment of Turner in any capacity other than manager of plasma fractionation. Plaintiff contends that such an injunction is necessary to prevent disclosure of confidential information because disclosure would be inevitable if Turner were to perform his job diligently and to his utmost ability. North Carolina courts have never enjoined an employee from working for a competitor merely to prevent disclosure of confidential information. Courts in other jurisdictions have granted such injunctive relief very infrequently in special circumstances not present here. In each case the employee had specialized technical training and was involved in research and development. There were circumstances of bad faith or underhanded dealing and the competitor lacked comparable level of technical knowledge and achievement. In *E. I. duPont de Nemours & Co. v. American Potash & Chemical Corp.*, 41 Del. Ch. 533, 200 A. 2d 428 (Ct. Ch. 1964), the issuance of a preliminary injunction was affirmed where an employee with a PhD in chemical engineering who had engaged in research and development of manufacture of titanium dioxide pigments by a chloride process was recruited for the same job by a competitor who had requested and been refused a license to the chloride process. In *Allis-Chalmers Manufacturing Company v. Continental Aviation and Engineering Corp.*, 255 F. Supp. 645 (E.D. Mich. 1966), the court affirmed the issuance of an injunction where a mechanical engineer who was the head of a laboratory responsible for all research and testing of a fuel injection pump which only three other companies had successfully developed after many years of work, and several others had failed, was hired by a competitor who had been negotiating for a license to do the same work. In the present case we have an employee skilled in management who has spent his career in production positions. He has no scientific or technical skills beyond those acquired ancillary to his responsibility to produce a product of high quality. He terminated his employment of his own accord, and was not contacted by his new employer for

some weeks after leaving the old one. Cutter and Travenol are the two largest producers of plasma fractions and have achieved comparable success in plasma fractionation. Cutter employed Turner at its production facility, not its research and development facility. The likelihood of broad disclosure in these circumstances is slight. These facts are very similar to those in *Standard Brands, Inc. v. Zumpe*, 264 F. Supp. 254 (E.D. La. 1967), where the court refused to enjoin the employment of a plant manager who had no technical education, who had had access to confidential information, and who had conferred with research personnel on the production aspects of their problems. The court noted that there was no showing of an intent to disclose, nor could inevitability of disclosure be presumed from employment in a managerial capacity.

A court of equity must weigh all relevant facts before resorting to the extraordinary remedy of an injunction. We think it clear on these facts that the trial court was correct in concluding that it would be unduly harsh to enjoin Turner from working for Cutter solely to enforce the duty of an employee not to disclose confidential information.

[8] Second, Travenol has sought and the trial court has granted an injunction to prevent Turner from revealing "all information regarded as confidential . . . including but not limited to information concerning the mechanical modification of the Westphalia centrifuge . . . " and to prevent Cutter from receiving the same. Again we must weigh the factors relevant to the likelihood of disclosure in determining the appropriateness of injunctive relief. Ordinarily, mere employment by a competitor alone will not create a likelihood of disclosure sufficient to support an injunction. *Kadis v. Britt, supra*. An employee may take from his employment general knowledge and skills. *Engineering Associates v. Pankow, supra*. Travenol has clearly shown that it is probable that at trial it will establish that the mechanical modification of the Westphalia centrifuge is a trade secret. This modification has been the subject of research and development and would be of current use to Cutter in its production process. Turner has worked in the production field for 22 years. Since this is precisely the field in which Turner will be employed by Cutter, not merely as a worker but at a high level supervisory position, the possibility of disclosure is high even absent any underhanded dealing in the circumstances of his termination of employment with Travenol.

Travenol has also presented evidence showing that several competitors have tried without success to make a similar modification. The disclosure of this modification would cost Travenol a competitive advantage worth many thousands of dollars. We find, therefore, that with respect to the modification of the Westphalia centrifuge, the trial court was correct in issuing a preliminary injunction in Travenol's favor.

We cannot agree, however, that Travenol has made an adequate showing to support that part of the injunction broadly prohibiting disclosure of "all information regarded as confidential." This provision presents problems of scope and nebulosity. The showing made with respect to the centrifuge modification rested upon its use in production, Turner's high level position in production, and the failure of competitors to make a similar modification. These factors have no bearing to the more broadly phrased part of the injunction. In *Engineering Associates v. Pankow, supra,* the court affirmed the denial of an injunction which would have broadly prohibited disclosure of "any information, plans, knowledge or trade secrets." The defendant-employee, an engineer, was hired by a competitor and admitted that he possessed trade secrets, but the court could find no abuse of confidence or bad faith in later employment to justify an injunction of such great scope. *Sub judice,* Travenol apparently considers its entire production process as secret and confidential. Yet it appears that Travenol, Cutter and other competing enterprises use the standard Cohn process in their plasma fractionation operations. Though there may be some variation in the production process among the competing enterprises, Travenol has failed to show unique processing, other than the modified Westphalia centrifuge, the disclosure of which would result in irreparable damage. In *Machinery Co. v. Milholen, supra,* the court recently affirmed the issuance of a preliminary injunction containing some broad language upon a clear showing of bad faith by former high level employees in engineering and sales. While we emphasize that the facts and circumstances of each case dictate the propriety of injunctive relief, we think that this case is closer to *Pankow* than *Milholen,* and that the scope of the injunction here is so broad that the defendant Turner may be deprived of the right to use his own skills and talents in his work for Cutter.

[9]    Third, plaintiff has sought and the court has granted an injunction prohibiting use or disclosure of any written docu-

---

ments obtained by Turner from Travenol which contain any trade secrets, information about research and development, technical memos, laboratory notebooks, specifications, cost and pricing data, or analyses of competitive products. There is nothing in the record to show that Turner took or possesses any such documents. Indeed Travenol produced evidence of an admirable security system. There is nothing in the record which would show any motive on the part of Turner to take or use such documents. Travenol has failed to show a likelihood of disclosure of such documents. We find no grounds for the issuance of a preliminary injunction with respect to any written documents. An injunction will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of a party. Nor will an injunction be issued to restrain one from doing that which he is not attempting to do. *Engineering Associates v. Pankow, supra; Standard Brands, Inc. v. Zumpe, supra.*

We approve and affirm only that part of the preliminary injunction which enjoins the defendant Turner from revealing, and the defendant Cutter from seeking to obtain, any confidential information concerning the modification of the Westphalia centrifuge by plaintiff Travenol.

Affirmed in part and reversed in part, and remanded for disposition in accordance with this opinion.

Judges MORRIS and VAUGHN concur.