**UNION CARBIDE CORPORATION,**
**Plaintiff,**

v.

**SUNOX, INC. and Kenneth R.**
**Owen, Defendants.**

**No. C–C–84–109–M.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

July 12, 1984.

Robert O. King and John W. Hoag, III, Ogletree, Deakins, Nash, Smoak & Stewart, Greenville, S.C., for plaintiff.

John M. Murchison, Jr. and Myles E. Standish, Kennedy, Covington, Lobdell & Hickman, Charlotte, N.C., for defendants.

### FINDINGS OF FACT and CONCLUSIONS OF LAW

McMILLAN, District Judge.

### PRELIMINARY STATEMENT

This case was heard on June 18, 1984, on the motion of plaintiff Union Carbide for a

preliminary injunction. Plaintiff seeks an order enjoining defendant Owen from disclosing trade secrets or confidential information obtained during his employment with Union Carbide, and further seeks an order enjoining Owen's new employer, defendant Sunox, Inc., from obtaining from Owen any trade secrets or confidential information belonging to Union Carbide.

## FINDINGS OF FACT

Plaintiff Union Carbide Corporation, through its Linde Division, manufacture and distributes various types of industrial gases. Union Carbide services about one-third of the national market for industrial gases. There are approximately 150 to 200 salespersons in the Linde Division of Union Carbide, and more than 10,000 salespersons employed by Union Carbide itself.

Defendant Sunox, Inc. is a North Carolina corporation that also manufactures and sells industrial gases. Sunox, from its principal place of business in Charlotte, North Carolina, is estimated to service approximately one one-hundredth of one percent of the national market for such products.

Defendant Kenneth R. Owen was employed by plaintiff Union Carbide in its Linde Division from 1973 until February of 1984. At the time of his departure from Linde, Owen served as area sales manager for North and South Carolina.

On February 3, 1984, Owen terminated his employment with Linde, and joined Sunox as its sales manager, bulk products.

Owen did not have a written employment contract with plaintiff; he was strictly an employee at will. Nor did Owen ever sign an agreement not to compete with Union Carbide. Owen did, on October 15, 1973, sign a "Memorandum of Employee's Agreement" in which he agreed to the following:

"To keep confidential and not disclose or use, either during or subsequent to my employment, any secret or confidential technology, information or trade secrets of the Corporation, except as required in my employment with the Corporation or

as authorized in writing by the Corporation."

Plaintiff's Exh. 1—Arch.

On February 7 and 8, 1984, J.F. Archibald, Jr., Regional Marketing Manager of Bulk Gas Products, wrote to both Owen and Sunox expressing his concern that Owen not divulge confidential information or trade secrets to Sunox, and suggesting that the "only reasonable and practical way" for plaintiff's interests to be protected, and for Owen to avoid violating the terms of his agreement with plaintiff, would be for Owen to have no responsibility for activities within the industrial gas business for those geographic areas or customers that were his responsibility while employed by Linde for a period of at least two (2) years. Plaintiff's Exhs. 5, 6—Arch.

In response to these letters, on February 16, 1984, James S. King, President of Sunox, wrote to Archibald advising Archibald that Owen's duties at Sunox would "be determined solely by Sunox and not by others." Further, King assured Archibald that Sunox had no intention or desire to attempt to utilize any trade secrets of Union Carbide. Plaintiff's Exh. 7—Arch.

Plaintiff contends that during his employment with Union Carbide, Owen learned and helped to develop sensitive trade secrets and extremely confidential information which he is about to divulge to Sunox, plaintiff's competitor in the industrial gas business. Plaintiff argues that the February 16, 1984 letter from James King failed to provide adequate assurance to Union Carbide that its trade secrets would be protected from disclosure, and that emergency action is required to prevent the destruction of plaintiff's business in this area.

Plaintiff alleges that Owen had access to and is likely to divulge confidential information falling into five categories:

1. *Technological information:* Plaintiff introduced evidence demonstrating that its business does involve reliance on trade secrets involving technical matters including design, manufacturing specifications,

performance, economy, engineering, chemical technology, manufacturing, and distribution. There was no substantial showing that Owen, as a salesman, had access to such information or that he was capable of understanding it or imparting it to anyone else in any more than a general manner.

The evidence shows that a substantial number of Union Carbide's new account acquisitions in the Carolinas are "technology assisted," and that in reaching such new accounts plaintiff relies on the services of engineers who are employed to provide the technological assistance that plaintiff's salesmen lack the expertise to provide.

2. *"Disinterest price"*: This is the break-even price, or the price below which a product will cost more to produce than it can be sold for. Plaintiff asserts that secrecy concerning its disinterest prices is of vital significance in selling strategy, since knowledge of plaintiff's bottom line price would permit competitors to outbid Union Carbide, and would permit customers of Union Carbide to drive prices down, causing tremendous losses of profits.

Plaintiff's evidence showed that Owen had general knowledge about the formula used to calculate the disinterest price for various products. Calculation of the actual price through use of the formula would, however, involve detailed knowledge of the current costs of each formula component. There was no evidence to show that Owen has current knowledge of any of Union Carbide's disinterest prices, or that he has disclosed any disinterest prices, or that he is about to disclose such prices.

Owen was not responsible for computing the disinterest price of any product while he was employed by Union Carbide. Owen states that he was never told the actual disinterest price for a product, but that instead he was authorized to sell a product for as low as 80% of the price stated on plaintiff's retail price list.

(Witnesses for plaintiff testified that Union Carbide's prices have undergone substantial upward revisions since Owen left his former employment.)

3. *Linde's vulnerable accounts:* Plaintiff's Exhibit 1 is a list of nine Linde bulk gas accounts that as of September 30, 1982, were considered by Linde to be vulnerable to acquisition by its competitors. At the hearing, plaintiff's witnesses testified that the principal reasons for the vulnerability of these accounts were Linde's prices, and the geographic distance of the accounts from Linde's points of manufacture and distribution.

Owen was exposed to this list at some point during his employment with Union Carbide.

While potential competitors are listed after each vulnerable account, Sunox is not listed as a potential competitor for any of the accounts on the list.

The list contains a disclaimer that some of the accounts had been renegotiated as of the date of publication and thus they could no longer be considered vulnerable.

Plaintiff did not introduce any evidence to show that either Owen or Sunox had plans to approach any of the nine accounts listed in plaintiff's Exhibit 1 with an offer of business. Even if plaintiff had introduced such evidence, it is difficult to see how Union Carbide would be harmed by disclosure of the contents of the list. The "price sensitivity" of the accounts as of September, 1982, is not relevant to today's market conditions; and there is nothing confidential about the geographic distance of these accounts from Linde's plant operations.

4. *Plant loading factors:* Plaintiff uses the term "plant loading" to refer to the amount of product that is being sold or committed from its production plants at any given time. Plaintiff contends that this information is a trade secret because it affects the extent to which plaintiff will be interested in forming contracts with potential buyers; if plaintiff's plants are fully "loaded," then plaintiff will not be able to accommodate additional customers, and plaintiff's bidding price will be affected accordingly.

There was no evidence to show that Owen has any current information concerning plaintiff's loading factors and current sales. Furthermore, plaintiff has made no showing of the need for secrecy regarding this information, since if plaintiff is underbid by a competitor during a time when its plants are fully "loaded," it cannot be harmed by loss of business.

5. *Miscellaneous confidential information:* Plaintiff introduced evidence to show that Owen was given access to various reports, manuals, and plans during the course of his employment. The evidence shows that plaintiff took only one of these manuals with him when he left his employment with plaintiff; this was a document entitled "Packaged and Specialty Gas Sales Development." Owen placed his name on this document at plaintiff's instruction; the document does not state that it contains confidential information. Owen states that he has not referred to this document, which lists the amount of product contained in various cylinders, since his employment by Sunox.

Plaintiff did not demonstrate that Owen possesses any physical data from the documents to which he was exposed which might be used competitively to undermine Union Carbide's industrial gas business.

\* \* \*

Plaintiff introduced evidence showing that three former industrial gas customers of Union Carbide now have accounts with Sunox. Nevertheless, the evidence further shows that the transfer of these accounts was not in any way related to Owen's change of employment. Two of the customers, Superior Machine Company and Champion Building Products, negotiated contracts with Sunox before or immediately after Owen's startup with Sunox; Owen had nothing to do with the negotiations between Sunox and these customers. The third customer, Control Southeast, Inc., telephoned Owen through a representative in April of 1984 to inquire about an account. Owen states that he referred this call to another representative of Sunox, and has since had no further contact with Control Southeast.

Plaintiff introduced evidence that Owen called upon E.I. DuPont de Nemours & Company (DuPont), a Union Carbide bulk gas customer, at its Wilmington, Delaware, corporate headquarters. Owen did not call upon DuPont while he was employed by Union Carbide. There was no evidence to show that Owen revealed any confidential information or trade secrets to representatives of DuPont during his visit with them, or that there is any potential reason for him to do so.

Finally, plaintiff relies on an excerpt from a letter written by Owen to Jim King of Sunox before Owen was hired. In the letter, Owen stated: "My knowledge of the market in this area could certainly add to the success of Sunox." Plaintiff's Exh. 3—Arch. The court does not conclude from this statement, without more, that Owen was referring to anything more than his general knowledge and expertise as a salesman.

## CONCLUSIONS OF LAW

The standard governing the issuance of a preliminary injunction in this circuit is set forth in *North Carolina State Ports v. Dart Containerline,* 592 F.2d 749 (4th Cir. 1979). The court is required to apply a balance-of-hardship test, and to consider the following four factors: (a) plaintiff's likelihood of success in the underlying dispute between the parties; (b) whether plaintiff will suffer irreparable injury if interim relief is denied; (c) the injury to defendant if an injunction is issued; and (d) the public interest. 592 F.2d at 750.

Applying these factors to the facts presented here, the court finds that the balance of hardships falls in favor of defendants, and that the injunction should be denied.

Plaintiff has stated three claims against defendants: (1) an action in tort against Owen for alleged breach of fiduciary relationship; (2) an action against Owen for alleged breach of contract (the Memorandum of Employee's Agreement); and (3) an

action for alleged deceptive trade practices under N.C.Gen. Stat. § 75–1.1.

Plaintiff has made no substantial showing that it is likely to prevail on its claim alleging breach of fiduciary relationship or breach of contract. The evidence does not show that Owen possesses any technical or scientific expertise beyond that which is inherently necessary for the performance of his job as a salesman of bulk gas products. There has been no showing that Owen took any secret information with him to his new place of employment; there is no evidence that Owen intends to disclose any information he might remember. The court will not presume that disclosure of confidential information is inevitable from these facts. *See Travenol Laboratories, Inc. v. Turner,* 30 N.C.App. 686, 694 (1976).

Plaintiff relies on *Union Carbide Corp. v. UGI Corp., et al.,* 731 F.2d 1186 (5th Cir.1984) for the proposition that Owen's knowledge of plaintiff's disinterest prices requires the issuance of a preliminary injunction. In that case, the issuance of a preliminary injunction was upheld where the trial judge found as fact that the accused salesman knew what Union Carbide's "disinterest price" was; that he had played a part in setting the disinterest price for *the particular transaction in question;* and that he had then disclosed the price to his new employer, either directly or by subtle inference. There has been no such strong showing in this case.

Plaintiff has similarly not demonstrated that it will be irreparably harmed without an injunction. While three former customers of plaintiff are now purchasing gas from defendant Sunox, the switches of those accounts cannot be attributed to Owen, nor to any disclosure which he might have made. Plaintiff was unable to name any serious or specific potential for injury arising from Owen's continued employment by Sunox without an injunction.

On the other hand, the harm to defendant Owen would be severe if an injunction were to issue. An injunction in this case would cost Owen his job, and in all likelihood his sole source of income, for the foreseeable future. Plaintiff's position amounts to a contention that an employer retains a property right in the expertise and general knowledge developed by an at-will employee during his tenure of employment. Leaving aside the public interest which militates against the creation of such property rights, no such right can be found in this case because it would be unsupported by consideration. Owen, an employee serving under only an oral agreement, had no enforceable employment rights against Union Carbide over and beyond the compensation he received for his work.

The court will not compel the enforcement of an agreement not to compete which does not in fact exist. With respect to the apparently enforceable contract between the parties, there has been no substantial showing of likelihood of breach. "An injunction will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of a party. Nor will an injunction be issued to restrain one from doing that which he is not attempting to do." *Travenol Laboratories, supra,* at 696.

Plaintiff's motion for a preliminary injunction will therefore be denied.