873 F.2d 1438
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CATALOG MARKETING SERVICES, LTD., d/b/a Shop The World By
Mail, Plaintiff-Appellee,
v.
David SAVITCH, Nationwide Shopper Systems, Inc.,
Defendants-Appellants.
CATALOG MARKETING SERVICES, LTD., d/b/a Shop The World By
Mail, Plaintiff-Appellant,
v.
David SAVITCH, Nationwide Shopper Systems, Inc.,
Defendants-Appellees.
CATALOG MARKETING SERVICES, LTD., d/b/a Shop The World By
Mail, Plaintiff-Appellee,
v.
David SAVITCH, Nationwide Shopper Systems, Inc.,
Defendants-Appellants.
 Nos. 88-3538, 88-3539 and 88-3657.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 9, 1989.
Decided April 24, 1989.
 
 John Lester Sarrett (Brooks, Pierce, McLendon, Humphrey & Leonard, on brief) for appellants/cross-appellees.
 Elizabeth Fairbank Kuniholm (John R. Edwards, C. Mark Holt, Tharrington, Smith & Hargrove, on brief) for appellee/cross-appellant.
 Before CHAPMAN, Circuit Judge, BUTZNER, Senior Circuit Judge, and J. FREDERICK MOTZ, United States District Judge for the District of Maryland, sitting by designation.
 CHAPMAN, Circuit Judge:
 
 
 1
 Appellants Nationwide Shopping Systems, Inc. ("NSS") and David Savitch appeal the entry of a preliminary injunction by the District Court for the Eastern District of North Carolina. The injunction prohibits NSS from contacting or including in its catalog of international catalogs any of the catalogers included in the appellee's, Catalog Marketing Services, Ltd. ("CMS"), catalog. NSS and Savitch contend that the court does not have jurisdiction over them and that CMS did not satisfy the standards for a preliminary injunction. CMS cross-appeals the district court's refusal to enjoin NSS's production of its own international catalog. We conclude that the court properly found jurisdiction over NSS and Savitch. However, we agree with NSS and Savitch that the scope of the injunction was too broad. Therefore, we affirm in part and reverse in part.
 
 
 2
 CMS is a North Carolina corporation with its principal place of business there. CMS is a direct mail cataloger, offering for sale its catalog of foreign catalogs entitled "Shop the World By Mail" ("Shop the World"). The president and sole shareholder of CMS is Gail Baird, a North Carolina resident. Under CMS's agreements with its foreign catalogers, CMS promised to offer Shop the World only in high quality magazines and not in conjunction with adult-type products.
 
 
 3
 NSS is a California corporation and has its principal place of business there. David Savitch, the president of NSS, is a California resident. NSS is not and has never been qualified to do business in North Carolina. NSS provides advertising and marketing services to companies engaged in direct mail catalog advertising. NSS places the catalog advertisements in block advertisements in national magazines and multiple advertiser inserts placed in local newspapers. NSS also publishes its own catalog, "Nationwide Shopper," which it sends to all persons who have responded to its advertisements.
 
 
 4
 The business relationship between CMS and NSS began in September 1986 when NSS sent a form letter to an address in Iowa asking whether CMS wished to advertise with NSS. In December 1986, Baird telephoned NSS, proposing an arrangement to advertise Shop the World through NSS. A final agreement was reached in April 1987. Under the terms of the agreement, NSS would act as CMS's advertising agency for 38 selected catalogs, including Shop the World. These 38 catalogs would be advertised under the title "Catalogs of the World" and would only be advertised in six national magazines or other publications agreed upon by the mutual consent of both parties. Baird also told Savitch that it was against her agreements with her foreign catalogers to offer their catalogs in conjunction with "adult-type," sexually oriented catalogs. The agreement recognized that "Shop the World By Mail" and "Catalogs of the World" were trade names of CMS.
 
 
 5
 Although all negotiations were either by telephone, mail or in California, NSS agreed to forward the names of customers requesting the 38 catalogs to CMS in North Carolina so CMS could fill the orders. To advertise more effectively, NSS hired various brokers across the United States to assemble and nationally distribute the multiple advertiser inserts of Shop the World. During June 1987, NSS and CMS agreed to place six display advertisements for "Catalogs of the World." However, in August, NSS placed two more advertisements, in unauthorized magazines, without CMS's consent. Furthermore, these unauthorized advertisements were coupled with "adult-type" catalogs, in contravention of CMS's agreements with its catalogers.
 
 
 6
 Concerned about the unauthorized placements, Baird telephoned Savitch who acknowledged that he had placed the advertisements without CMS's consent. He also stated that he ran the advertisements to obtain market information on the success rate of foreign catalog advertising. In a later conversation, Savitch threatened to assemble his own international catalog if CMS severed its ties with NSS.
 
 
 7
 Because of the continuing disputes, NSS exercised its contractual right of cancellation, terminating the contract at the end of the fall 1987 season. In January 1988, NSS began advertising its own "International Catalog Collection." NSS maintains that this compilation was its own work and completely independent from its relationship with CMS. NSS compiled its catalog from a list of 477 foreign advertisers which NSS gathered from various public sources, including trade association lists and membership directories. NSS contacted and included catalogers who generally deal on a non-exclusive basis.
 
 
 8
 On March 1, 1988, CMS filed an action for breach of contract, breach of fiduciary duty, unfair and deceptive trade practices and misappropriation of trade secrets. An ex parte temporary restraining order was granted prohibiting NSS from advertising CMS's catalog, from advertising or producing it own catalog of foreign catalogs and from contacting any foreign cataloger for whom NSS had not previously advertised. After a full hearing, the temporary restraining order was vacated and a preliminary injunction was granted. The injunction was not as broad as the TRO, it only prohibited NSS from including any of the 38 catalogs covered under the CMS-NSS contract in the "International Catalog Collection." This injunction was later expanded to enjoin NSS from contacting any of the covered 38 catalogers.
 
 I. PERSONAL JURISDICTION
 
 9
 Generally a plaintiff must only make a prima facie showing of personal jurisdiction to defeat a motion to dismiss for lack of personal jurisdiction, Dowless v. Warren Rupp Houdailles, Inc., 800 F.2d 1305 (4th Cir.1986), however, when injunctive relief is sought, a stronger showing must be made. The Second Circuit has held that when a preliminary injunction is requested, the plaintiff must demonstrate "that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits." Visual Sciences, Inc. v. Integrated Communications, Inc., 660 F.2d 56, 58 (2d Cir.1981). Likewise, the Fifth Circuit has adopted this standard. Enterprise International, Inc. v. Corporacion Estatal Petrolea Ecuatoriana, 762 F.2d 464, 471 (5th Cir.1985).
 
 
 10
 NSS claims that CMS has not presented facts indicating a likelihood of success on the jurisdictional issue at trial. Although neither NSS nor its brokers specifically target a North Carolina market, they do seek to obtain a national market when placing advertisements. Of the 288 active accounts which NSS or its brokers had in 1987 and 1988, as few as three and as many as eleven were from North Carolina. Only two to three percent of NSS's total circulation reaches North Carolina and the revenues from North Carolina constitute less than three percent of NSS's total revenues.
 
 
 11
 However, in spite of the seemingly low percentages, NSS does generate a sizeable sales volume from North Carolina residents. NSS solicited over eight million orders in 1987 and more than four million orders in 1988 from North Carolina residents. In North Carolina, NSS circulated almost four million space advertisements in national magazines in 1987 while over two million were circulated in 1988. In addition, NSS has distributed approximately 47,000 of its own "Nationwide Shopper" catalog to North Carolina residents. To encourage interest in its new "International Catalog Collection," NSS has circulated almost 1,500,000 advertisements in national magazines and 248,000 newspaper inserts in North Carolina alone. Finally, NSS received approximately 23,600 responses to its advertisements in 1987 from North Carolina residents while receiving approximately 11,836 in 1988.
 
 
 12
 Although NSS and Savitch contend that there has not been a sufficient demonstration of the court's jurisdiction over them, we conclude that, even under the heightened standard cited above, CMS has met its burden. Contrary to their assertions, NSS and Savitch have had contacts with North Carolina. They have, either personally or through brokers, placed advertisements in North Carolina. Additionally, they sent the requests from these advertisements to North Carolina to be filled by CMS. Moreover, NSS has derived substantial revenue from North Carolina residents although such revenue may not compose a large percentage of NSS's total revenues. In sum, NSS has gained sizeable benefits from its contacts with North Carolina. Consequently, we affirm the district court's order finding jurisdiction for the reasons stated therein.
 
 II. PRELIMINARY INJUNCTION
 
 13
 When reviewing a district court's grant of a preliminary injunction, our standard of review is abuse of discretion. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048, 1054 (4th Cir.1985). To determine whether the district court abused its discretion, we must examine the analysis the court employed in granting the preliminary injunction. The standard for granting preliminary injunctions is the balance of hardship test as stated in Blackwelder Furniture Co. v. Seiliq Mfg. Co., 550 F.2d 189 (4th Cir.1977). Before a preliminary injunction is issued, a court must balance four factors: the likelihood of irreparable harm to the plaintiff without the temporary injunction; the likelihood of harm to the defendant with the injunction; the plaintiff's likelihood of success on the merits; and the public interest. Telvest, Inc. v. Bradshaw, 618 F.2d 1029, 1032 (4th Cir.1980). If the factors balance in favor of the plaintiff, then he is entitled to the preliminary injunction.
 
 
 14
 After a review of the district court's decision, we find no abuse of its discretion in granting the preliminary injunction to CMS. The court properly applied the Blackwelder Furniture test. However, we conclude that the scope of the injunction is beyond that necessary to protect CMS's interests.
 
 
 15
 In trade secret or unfair competition cases, a preliminary injunction is issued for the purpose of preventing actual or imminent misuse of secret information gained by reason of a confidential business relationship. Ferroline Corp. v. General Aniline & Film Corp., 207 F.2d 912, 923 (7th Cir.1953), cert. denied, 347 U.S. 953 (1954). See also Travenol Laboratories, Inc. v. Turner, 30 N.C.App. 686, 228 S.E.2d 478 (1976). However, injunctive relief must not extend beyond the threatened injury. Id. NSS argues that the injunction should be limited to restraining the actual or threatened misuse of any confidential information which it received from CMS. Therefore, only the solicitation of business from the 37 foreign catalogers should be enjoined; not unsolicited contact with or acceptance of business from these catalogers.
 
 
 16
 This limitation on the scope of an injunction has not been specifically addressed by this court or the courts of North Carolina. However, other state courts have considered the distinction between solicitation and business in general, and we find their holdings persuasive. In Alex Foods, Inc. v. Metcalfe, 137 Cal.App.2d 415, 290 P.2d 646, 655 (1950), the court ruled that "equity will not enjoin a former employee from receiving business from the customers of his former employer, even though he should be prohibited from soliciting such business." Likewise in Brenner v. Stavinsky, 88 P.2d 613, 615 (Okla.1939), the court held that "equity will not interfere with the right of defendants to do business with these customers but may forbid the initiation or solicitation of business by the use of" confidential information. Finally, the proper scope of this type of injunction should be one which "does not interfere with the respondents' right to do business with [the former] customers; but ... forbids initiation of that business by the use of [confidential] information.... Acceptance of patronage of all who voluntarily decide to employ [respondents] is not interfered with; only solicitation ... is forbidden." Colonial Laundries, Inc. v. Henry, 138 A. 47, 50 (R.I.1927). The end result is a less restrictive injunction which prevents the defendant from using the property rights of the plaintiff, but allows him to continue to have similar business opportunities as other non-related competitors.
 
 
 17
 We find that the injunction entered by the district court is broader than need be to protect the interests of CMS. While it is proper to enjoin NSS from soliciting the 37 catalogers of CMS, it is unnecessary to prevent NSS from working with these catalogers should they voluntarily and without solicitation contact NSS. In effect, the injunction as entered not only protects CMS from unauthorized use of its client list by NSS but also insulates CMS from any competition by NSS. Therefore, the scope of the injunction is too broad and should be narrowed to enjoin NSS only from soliciting the 37 foreign catalogers advertised in Shop the World. There was no abuse of discretion in setting the amount of the bond, and we find no merit in the CMS claim that the injunction should be expanded to enjoin the production and advertising of International Catalog Collection.
 
 
 18
 In view of the above, the case is affirmed in part, reversed in part and remanded with instructions to the district court to modify the preliminary injunction as stated.
 
 
 19
 AFFIRMED in part, REVERSED in part, and REMANDED.